## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| COACH USA, INC., *et al.*,[1] | Case No. 24-11258 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:**<br>**August 13, 2024 at 10:30 a.m. (ET)** |
| | **Ref. Docket No. 213, 288 & 514** |

### NOTICE OF FILING OF *FURTHER REVISED* GP
### STALKING HORSE SALE ORDER AND AMENDMENT TO APA

**PLEASE TAKE NOTICE** that on June 12, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtor**s**") filed the *Debtors' Motion for Entry of an Order (a) Approving (I) the Debtors' Designation of the Stalking Horse Bidder for Certain of the Debtors' Assets as Set forth in the Stalking Horse Agreement, (II) the Debtors' Entry into the Stalking Horse Agreement, and (III) the Bid Protections and (B) Granting Related Relief* [Docket No. 213] (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Court"). A proposed form of order approving the Motion was attached to the Motion as Exhibit A (the "Proposed Order").

**PLEASE TAKE FURTHER NOTICE** that, on July 16, 2024, the Court entered the *Order (A) Approving (I) the Debtors' Designation of the GP Stalking Horse Bidder for Certain of the Debtors' Assets as Set Forth in the GP Stalking Horse Agreement, (II) the Debtors' Entry into the GP Stalking Horse Agreement, and (III) the Bid Protections and (B) Granting Related Relief* [Docket No. 288] (the "GP Bidding Procedures Order").[2] Attached as Exhibit 1 to the GP Bidding Procedures Order was the GP Stalking Horse APA and form of sale order (the "GP Stalking Horse Sale Order").

**PLEASE TAKE FURTHER NOTICE** that, on August 9, 2024, the Debtors filed a revised GP Stalking Horse Order (the "Revised GP Stalking Horse Order") and the First Amendment to Asset Purchase Agreement (the "First Amendment"). *See* Docket No. 514.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have filed a further revised GP Stalking Horse Order (the "Further Revised GP Stalking Horse Order") and a revised First Amendment (the "Revised First Amendment"). A copy of the Further Revised GP Stalking Horse

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/CoachUSA.  The Debtors' mailing address is 160 S Route 17 North, Paramus, NJ 07652.

[2]     Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the GP Bidding Procedures Order or the GP Bidding Procedures Order, as applicable.

Order is attached hereto as <u>Exhibit A</u>, and a blackline comparing the Further Revised GP Stalking Horse Order and the Revised GP Stalking Horse Order is attached hereto as <u>Exhibit B</u>.  A copy of the Revised First Amendment is attached hereto as <u>Exhibit C</u>, and a blackline comparing the Revised First Amendment and the First Amendment is attached hereto as <u>Exhibit D</u>.

 **PLEASE TAKE FURTHER NOTICE** that copies of the GP Stalking Horse Sale Order and other information regarding these chapter 11 cases are available for inspection free of charge on the case website at https://cases.ra.kroll.com/CoachUSA.

 **PLEASE TAKE FURTHER NOTICE** THAT THE SALE HEARING WILL BE HELD ON **<u>AUGUST 13, 2024, AT 10:30 A.M. (ET)</u>** BEFORE THE HONORABLE MARY F. WALRATH, UNITED STATES BANKRUPTCY COURT JUDGE FOR THE DISTRICT OF DELAWARE, 824 N. MARKET STREET, 5TH FLOOR, COURTROOM NO. 4, WILMINGTON, DELAWARE 19801.

 **PLEASE TAKE FURTHER NOTICE THAT, IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR A HEARING.**

 *[Signature page follows]*

31933482.1

2

Dated:  August 13, 2024
        Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Joseph M. Mulvihill*
Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Joseph M. Mulvihill (No. 6061)
Timothy R. Powell (No. 6894)
Rebecca L. Lamb (No. 7223)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email:   emorton@ycst.com
         sbeach@ycst.com
         jmulvihill@ycst.com
         tpowell@ycst.com
         rlamb@ycst.com


- *and* -

**ALSTON & BIRD LLP**
J. Eric Wise (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
William Hao (admitted *pro hac vice*)
90 Park Avenue
New York, New York 10016
Telephone:    (212) 210-9400
Facsimile:    (212) 210-9444
Email:        eric.wise@alston.com
              matthew.kelsey@alston.com
              william.hao@alston.com

*Counsel to the Debtors and Debtors in Possession*

31933482.1

3

## **EXHIBIT A**

**Further Revised GP Stalking Horse Sale Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| COACH USA, Inc., *et al.*,[1] | Case No. 24-11258 (MFW) (Jointly Administered) |
| Debtors. | Ref. Docket Nos. 20, 241, 282, 288, 297, 313, 348, 499, and 503 |

**ORDER AUTHORIZING AND APPROVING (I) PURCHASE AGREEMENT AMONG DEBTORS AND GREAT PLAINS CREW CHANGE COMPANY, LLC, (II) THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, ENCUMBRANCES, AND OTHER INTERESTS, (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Sale Motion")[2] filed by the above captioned debtors and debtors-in-possession (collectively, the "Debtors") seeking entry of an order (the "Order"), pursuant to sections 105(a), 363, 365, and 1113 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1, 6004-1, 9006-1, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing and approving (i) the sale of certain of the Debtors'

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/CoachUSA.  The Debtors' mailing address is 160 S Route 17 North, Paramus, NJ 07652.

[2] The Sale Motion was filed on June 12, 2024 as *Debtors' Motion for Entry of (A) An Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Designating Stalking Horse Bidders and Stalking Horse Bidder Protections, (III) Scheduling Auction for and a Hearing to Approve the Sale of Assets, (IV) Approving Notice of Respective Date, Time and Place for Auction and for a Hearing on Approval of the Sale, (V) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (VI) Approving Form and Manner of Notice Thereof, and (VII) Granting Related Relief; and (B) Orders Authorizing and Approving (I) The Sale of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, (II) The Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases, and (III) Granting Related Relief.*

assets (the "Sale") free and clear of all Liabilities, Indebtedness and Encumbrances (other than Assumed Liabilities and Permitted Encumbrances), pursuant to the terms of the Asset Purchase Agreement dated July 5, 2024 between the Debtors identified as Sellers set forth on Schedule A thereto ("Sellers") and Great Plains Crew Change Company, LLC or its designee(s) ("Purchaser"), a copy of which is annexed hereto as Exhibit A (as amended, supplemented, or otherwise modified by the parties, and together with any schedules and exhibits thereto, the "Agreement") which is incorporated herein by reference,[3] (ii) the assumption and assignment of certain executory contracts and unexpired leases, and (iii) granting related relief; and this Bankruptcy Court having entered an order dated July 9, 2024 [Docket No. 241] (the "Bidding Procedures Order"), (i) approving bidding procedures in connection with the sale of substantially all of the Debtors' assets, (ii) designating Stalking Horse Bidders and Bid Protections, (iii) scheduling an auction for (the "Auction") and a hearing to approve the sale (the "Sale Hearing") of assets, (iv) approving notice of respective date, time and place for auction and for a hearing on approval of the sale, (v) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases, (vi) approving form and manner and notice thereof, and (vii) granting related relief; and the Auction having been cancelled in accordance with the Bidding Procedures; and the Sellers having determined, in their business judgment, that the Qualified Bid by Purchaser for the Purchased Assets was the highest and otherwise best Qualified Bid received with respect to the Purchased Assets; and the Sellers having filed the a notice of successful bidder [Docket No. 503], designating Purchaser or its designee as the Successful Bidder for the Purchased Assets; and the Bankruptcy Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Sale Motion, the

---

[3] Capitalized terms not defined herein shall have the meanings ascribed to such terms as in the Agreement, or if not defined in the Agreement, in the Sale Motion

relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in these Chapter 11 Cases, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**

A.     The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     The Bankruptcy Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these Chapter 11 Cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Court may enter a final order with respect to the Sale Motion, the Agreement, the transactions contemplated thereby, and all related relief, in each case, consistent with Article III of the United States Constitution.

D.      This Order constitutes a final and appealable order as set forth in 28 U.S.C. § 158(a), except as otherwise set forth herein.

E.      The Purchased Assets constitute property of the Debtors' estates, and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

F.      The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) sections 105(a), 363, 365, 503, 507, and 1113 of Bankruptcy Code, (ii) Bankruptcy Rules 2002, 6003, 6004, 6006, 9007, 9008, and 9014 and (iii) Local Rules 2002-1, 6004-1, 9006-1, and 9013-1(m).

G.      On June 11, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

H.      On June 25, 2024, the Office of the United States Trustee (the "UST") appointed an official committee of unsecured creditors (the "Committee").

I.      On July 19, 2024, the Court entered the *Final Order (I) Authorizing the Applicable Debtors to Obtain Postpetition Secured Financing; (II) Authorizing the Applicable Debtors' Use of Cash Collateral; (Iii) Granting Adequate Protection to Prepetition ABL Administrative Agent and the Other Prepetition Secured Parties; and (IV) Granting Related Relief* [Docket No. 306] (as amended, supplemented or otherwise modified from time to time, the "DIP Order").

***Proper Notice and Opportunity to Object***

J.      As evidenced by the affidavits of service filed with the Bankruptcy Court, proper, timely, adequate, and sufficient notice of the Sales, Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with section 363(b) of the Bankruptcy Code, Bankruptcy Rules

2002, 6004, 9006, 9007, 9008 and 9014, the Local Rules, and in compliance with the Bidding Procedures Order and the Agreement.

K.     As evidenced by the affidavits of service filed with the Bankruptcy Court, proper, timely, adequate, and sufficient notice of the assumption and assignment of the Assumed Contracts, Assumed Equipment Leases, and Assumed Real Property Leases (collectively, the "Assigned Contracts") have been provided in accordance with sections 365 and 1113 of the Bankruptcy Code.

L.     On July 16, 2024, the Debtors mailed notice of the sale to, among others, (a) the Office of the United States Trustee for the District of Delaware; (b) holders of the 30 largest unsecured claims on a consolidated basis against the Debtors; (c) proposed counsel for any official committee appointed in the Chapter 11 Cases; (d) counsel to Wells Fargo Bank, National Association in its capacity as DIP Agent and Prepetition ABL Administrative Agent; (e) counsel to the Stalking Horse Bidders; (f) the United States Attorney for the District of Delaware; (g) the attorneys general for each of the states in which the Debtors conduct business operations; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; (j) all known taxing authorities for the jurisdictions to which the Debtors are subject; (k) all environmental authorities having jurisdiction over any of the Assets; (l) all state, local or federal agencies, including any departments of transportation, having jurisdiction over any aspect of the Debtors' business operations; (m) all entities known or reasonably believed to have asserted a lien on any of the Assets; (n) counterparties to the Debtors' executory contracts and unexpired leases; (o) all persons that have expressed to the Debtors an interest in a transaction with respect to the Assets during the past six (6) months; (p) the State of Texas, acting through the Texas Department of Transportation; (q) the office of unclaimed property for each state in which the Debtors conduct business; (r) the Pension Benefit Guaranty Corporation; (s) the Surface Transportation Board and all other

Governmental Authorities (as defined in the NewCo Stalking Horse APA) with regulatory jurisdiction over any consent required for the consummation of the transactions; (t) the Federal Motor Carrier Safety Administration; (u) the Federal Trade Commission; (v) the U.S. Department of Justice; (w) each of the Unions; (x) all of the Debtors' other known creditors and equity security holders; and (y) those parties who have formally filed a request for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 at the time of service (collectively, the "Sale Notice Parties").

M.      In addition to the foregoing notice, the Debtors posted the Notice of Auction and Sale Hearing  and the relief requested in this Order on the website of the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC on July 16, 2024.

N.      Such notice was sufficient and appropriate under the particular circumstances.  No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts or of the entry of this Order is necessary or shall be required.

O.      A reasonable opportunity to object or be heard regarding the requested relief in the Sale Motion and the Order has been afforded to all interested persons and entities, including, without limitation, the Sale Notice Parties.  Other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

***Proper Bases For Sale and Assumption/Assignment of Contracts***

P.      The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Agreement, sell the Purchased Assets and assume and assign the Assigned Contracts under section 363, 365, and 1113 of the Bankruptcy Code prior to confirmation of a plan of reorganization under section 1129 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors,

their estates and their creditors.  Such business reasons include, but are not limited to, the fact that (i) there is a provision in the Agreement providing for an automatic reduction in the Purchase Price if the Closing is delayed past August 19, 2024, (ii) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated quickly; (iii) the Agreement constitutes the highest and best offer for the Purchased Assets; (iv) the Agreement and the Closing will present the best opportunity to realize the value of the Debtors on a going-concern basis and avoid decline in the Debtors' business; and (v) unless the Sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Agreement, creditors' recoveries may be diminished.

Q.      The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale of the Purchased Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Agreement.  No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate the Sale.

R.      The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtors nor the Purchaser is entering into the transactions contemplated by the Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims or similar claims.

S.      The Debtors have advanced good, sufficient and sound business reasons for seeking to enter into the Agreement, as more fully set forth in the Sale Motion and as demonstrated at or before the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Purchased Assets, including the assignment of the Assigned Contracts, and to consummate the

transactions contemplated by the Agreement.  Notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to the Purchaser and the assumption and assignment of the Assigned Contracts is a legal, valid and effective transfer of the Purchased Assets including the Assigned Contracts.

***Good Faith Findings***

T.      The Debtors, Purchaser and their respective counsel and other advisors have complied with the Bidding Procedures Order, the Bidding Procedures, and the Assumption and Assignment Procedures in all respects. Purchaser submitted a Qualified Bid pursuant to the Bidding Procedures approved by the Court, was determined to be the Successful Bidder for the Purchased Assets, and was granted certain Bid Protections in accordance with the Bidding Procedures Order and the Bidding Procedures.

U.      The Debtors and their advisors thoroughly and fairly marketed the Purchased Assets and conducted the related sale process in good faith and in a fair and open manner, soliciting offers to acquire the Purchased Assets from a wide variety of parties. The sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any Person or any entity (as such term is defined in the Bankruptcy Code, an "Entity") that expressed an interest in acquiring the Purchased Assets, or who the Debtors believed may have an interest in acquiring, and be permitted and able to acquire, the Purchased Assets, to conduct due diligence, make an offer to purchase the Debtors' assets, including, without limitation, the Purchased Assets, and submit higher and otherwise better offers for the Purchased Assets than Purchaser's Successful Bid. The Debtors and Purchaser have negotiated and undertaken their roles leading to the Sale and entry into the Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner. The sale process conducted by the Debtors pursuant to the

31933574.1

Bidding Procedures Order and the Bidding Procedures resulted in the highest and otherwise best offer for the Purchased Assets for the Debtors and their estates, was in the best interests of the Debtors, their creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result. The Debtors' determinations that the Agreement constitutes the highest and otherwise best offer for the Purchased Assets and maximizes value for the benefit of the Debtors' estates constitutes a valid and sound exercise of the Debtors' business judgment and are in accordance and compliance with the Bidding Procedures and the Bidding Procedures Order. The Agreement represents fair and reasonable terms for the purchase of the Purchased Assets. No other Person or Entity has offered to purchase the Purchased Assets for greater overall value to the Debtors' estates than the Purchaser. Approval of the Sale Motion (as it pertains to the Sale) and the Agreement and the consummation of the transactions contemplated thereby will maximize the value of each of the Debtors' estates and are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest. There is no legal or equitable reason to delay consummation of the transactions contemplated by the Agreement, including without limitation, the Sale.

V.      Purchaser is not an "insider" or "affiliate" of any of the Debtors as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, managers, or controlling stockholders existed between the Debtors and the Purchaser. The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to all of the Purchased Assets and the relief provided for in the Order.  The Agreement was negotiated at arm's length and entered into in good faith and without collusion or fraud of any kind. The Purchaser has not engaged in collusion or any conduct that would otherwise control or tend

to control the sale price as between or among potential bidders and, therefore, has not violated section 363(n) of the Bankruptcy Code.  Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code; or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the Sale and transfer of the Purchased Assets including the Assigned Contracts to the Purchaser.  In particular, (i) Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) Purchaser in no way induced or caused the chapter 11 filing by the Debtors; (iii) Purchaser has not engaged in any conduct that would cause or permit the Sale or the Agreement to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code by any action or inaction; (iv) no common identity of directors, managers, officers, or controlling stockholders exist between Purchaser, on the one hand, and any of the Debtors, on the other hand; (v) Purchaser complied with the Bidding Procedures and all provisions of the Bidding Procedures Order and the Assumption and Assignment Procedures; (vi) Purchaser agreed to subject its Bid to the competitive Bidding Procedures set forth in the Bidding Procedures Order; and (vii) all payments to be made, and all other material agreements or arrangements entered into or to be entered into, by Purchaser in connection with the Sale have been disclosed.

W.     The Purchaser has complied in good faith with the Bidding Procedures Order (including the Bidding Procedures) in all material respects.  The Purchaser is entitled to all of the protections and immunities of section 363(m) of the Bankruptcy Code.

X.     The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates. The total

consideration provided by the Purchaser for the Purchased Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) constitutes fair consideration and fair value under the Bankruptcy Code, the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), the Uniform Fraudulent Conveyance Act and other similar laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction; (b) is the highest and best value obtainable for the Purchased Assets; (c) will provide a greater recovery to creditors than would be provided by any other available alternative; and (d) constitutes reasonably equivalent value (as that term is defined in each of the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), the Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code). Without limiting the foregoing, no objection was raised to the Sale Motion with respect to the relief granted herein on the basis that the creditors of any particular Debtor were improperly prejudiced by the proposed Sale. Based on the evidence before the Court, the sale consideration under the Agreement constitutes adequate consideration for the Purchased Assets of each Debtor and such consideration does not disadvantage the creditors of any particular Debtor.

*Transfer Free and Clear*

Y.      Except with respect to Assumed Liabilities and Permitted Encumbrances as expressly provided in the Agreement or this Order, effective upon the consummation of the Sale at Closing, the Purchased Assets shall be sold free and clear of all Liabilities, Indebtedness and Encumbrances (including without limitation, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, mechanics' liens, materialman's liens and other consensual and non-consensual liens and statutory liens, judgments, demands,

encumbrances, rights of first refusal, offsets, set-offs, contracts, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax liabilities, decrees of any court or foreign or domestic governmental entity, or charges and interests of any kind or nature, if any,  any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or the Debtors' predecessors or affiliates, claims (as that term is used in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual and other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfilled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims arising under any doctrines of successor liability or alter-ego) (collectively, "Liens, Claims, Encumbrances and Interests"), with such Liens, Claims, Encumbrances and Interests, upon the Sale at Closing, to attach to the proceeds of the Sale, in the order of their priority, to be received by the Debtors in accordance with the Agreement, subject to the terms of the DIP Order and any other applicable order of the Court, and with the same priority, validity, force, and effect as such Liens, Claims, Encumbrances and Interests had immediately prior to the consummation of such Sale, and subject to the same defenses and avoidability, if any, as before the Closing, and the Purchaser would not enter into the Agreement to purchase the Purchased Assets otherwise. All proceeds of the Sale shall be remitted to the Debtors, subject to the terms of the DIP Order and any other applicable order of the Court. All

Liens, Claims, Encumbrances and Interests with respect to the Excluded Assets will continue in, under, and against the Excluded Assets with the same priority, validity, force, and effect as such Liens, Claims, Encumbrances and Interests now have.

Z.    The transfer of the Purchased Assets to the Purchaser is a legal, valid and effective transfer of the Purchased Assets, and, except as may otherwise be provided in the Agreement or this Order, shall vest, upon Closing, the Purchaser with all rights, titles and interests to the Purchased Assets free and clear of any and all Liens, Claims, Encumbrances and Interests.  Except as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Purchased Assets being sold by the Debtors.

AA.    The transfer of the Purchased Assets to the Purchaser, free and clear of Liens, Claims, Encumbrances and Interests (other than the Assumed Liabilities and Permitted Encumbrances) upon the consummation of the Sale at Closing, will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests in, under or against the Purchased Assets, as all such Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever shall attach to the proceeds of the Sale of the Purchased Assets received by the Debtors, subject to the terms of the DIP Order and any other applicable order of the Court, in the order of their priority, with the same priority, validity, force and effect which such Liens, Claims, Encumbrances and Interests had immediately prior to the consummation of such Sale, subject to any claims and defenses the Debtors or other parties may possess with respect thereto.  Except as otherwise set forth in this Order, upon consummation of the Sale in accordance with the Agreement and this Order, all persons having Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets, other than Assumed

Liabilities and Permitted Encumbrances, shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances and Interests against the Purchaser, any of their assets, property, successors or assigns, or the Purchased Assets.

BB.    The Debtors may sell the Purchased Assets free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever, other than the Assumed Liabilities and Permitted Encumbrances, because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  Those holders of Liens, Claims, Encumbrances and Interests and who did not object, or who withdrew their objections, to the Sale of the Purchased Assets and the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All objections to the Sale Motion have been waived, overruled or resolved by agreement of the parties or as set forth in this Order.  Those holders of Liens, Claims, Encumbrances and Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, Claims, Encumbrances and Interests, if any, attach to the proceeds of the Sale of the Purchased Assets, if any, ultimately attributable to the property against or in which they claim or may claim any Liens, Claims, Encumbrances and Interests, and with such Liens, Claims, Encumbrances and Interests being subject to treatment by separate order of the Bankruptcy Court.

CC.    The Purchaser would not have entered into the Agreement if the Sale was not free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever, other than the Assumed Liabilities and Permitted Encumbrances, as set forth in the Agreement and herein, or if the Purchaser would, or in the future could, be liable for any such Liens, Claims, Encumbrances and Interests.

DD.    Not selling the Purchased Assets free and clear of all Liens, Claims, Interests and Encumbrances, other than the Assumed Liabilities and Permitted Encumbrances, to the Purchaser would adversely impact the Debtors' estates, and the Sale of Purchased Assets other than free and clear of all Liens, Claims, Interests and Encumbrances, other than the Assumed Liabilities and Permitted Encumbrances, would be of substantially less value to the Debtors' estates.

*__Assumption and Assignment of the Assigned Contracts__.*

EE.    The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order, the Assumption and Assignment Procedures, and Schedule 2.1(b), (c) and (j) of the Agreement, are integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.  Specifically, the assumption and assignment of the Assigned Contracts (i) are necessary to sell the Purchased Assets to Purchaser, (ii) allow the Debtors to maximize the value of the Purchased Assets, including the Assigned Contracts, (iii) limit the losses suffered by the counterparties to the Assigned Contracts, and (iv) maximize the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assigned Contracts.

*__Cure Notice: Adequate Assurance of Future Performance__.*

FF.    As shown by the certificates of service filed with the Court, the Debtors have served upon each non-Debtor counterparty to such contracts (each, a "Non-Debtor Counterparty"), prior to the Sale Hearing, notices, including (i) the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sales* (the "Initial Notice") dated July 18, 2024 [Docket No. 297], (ii) *the Notice of Supplemental Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection*

*with the Sales* (the "<u>Supplemental Notice</u>") dated July 18, 2024 [Docket No. 313], (iii) the *Notice of Second Supplemental Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sales* dated July 25, 2024 [Docket No. 348] (the "<u>Second Supplemental Notice</u>"), and (iv) the *Notice of Third Supplemental Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sales* dated August 7, 2024 [Docket No. 499] (the "<u>Third Supplemental Notice</u>") (collectively, the "<u>Potential Assumption and Assignment Notice</u>") that Debtors may wish to assume and assign to the Successful Bidder certain executory contracts and unexpired leases (the "<u>Contracts</u>") pursuant to section 365 of the Bankruptcy Code, and of the related proposed cure costs (if any) due under section 365(b) of the Bankruptcy Code (the "<u>Cure Costs</u>") with respect to such contracts and leases. The service of the Potential Assumption and Assignment Notice was good, sufficient and appropriate under the circumstances of the Chapter 11 Cases and complied with the Assumption and Assignment Procedures and any orders of the Court, and no other or further notice is required with respect to the Cure Costs or for the assumption and assignment of the Contracts. All Counterparties to the Contracts have had a reasonable and sufficient opportunity to object to the Cure Costs listed on the Potential Assumption and Assignment Notice in accordance with the Assumption and Assignment Procedures. Accordingly, all Counterparties to Contracts who did not object or who withdrew their objections to the Cure Costs listed on the Potential Assumption and Assignment Notice prior to the Sale Hearing are deemed to have consented to such Cure Costs, and all Counterparties to Assigned Contracts who did not file an objection to the assumption by the Debtors of such Assigned Contracts and the assignment thereof to Purchaser prior to the Sale Hearing are deemed to have consented to the assumption of such Assigned Contract and the assignment thereof to Purchaser.

***No Successor or Derivative Liability.***

GG.     The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no common identity between the Debtors and the Purchaser, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates. Other than the Assumed Liabilities, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities and withdrawal liability under Subtitle E of Title IV of ERISA or under WARN, the Sellers' Plans and/or any Collective Bargaining Agreements.

***Record Retention***

HH.     Pursuant to the terms of and subject to the conditions in Sections 7.1(c) and 7.7 of the Agreement, following the Closing, the Debtors, their successors and assigns and any trustee in bankruptcy will have access to the Debtors' books and records for the specified purposes set forth in, and in accordance with, the Agreement.

***Valid and Binding Contract; Validity of Transfer***

II.     The Agreement is a valid and binding contract between the Debtors and Purchaser and shall be enforceable pursuant to its terms. The Agreement and the Sale itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, and any chapter 11 trustee appointed in these Chapter 11 Cases, or in the event the Chapter 11 Cases are converted to a case under chapter 7 of the Bankruptcy Code, a chapter 7 trustee, and shall not be subject to rejection or avoidance by the foregoing parties or any

other Person. The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(1) of the Bankruptcy Code and all of the applicable requirements of such sections have been complied with in respect of the Sale.

***Other Provisions***

JJ.      The Sale of the Purchased Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The Sale does not constitute a *sub rosa* chapter 11 plan.

KK.      The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the relief requested in the Sale Motion.

LL.      As set forth in Agreement, the Debtors and the Purchaser are exchanging releases of certain claims.  The exchange of such releases is fair and reasonable, and for fair value.

MM.      As set forth in Agreement, the Purchaser is purchasing from the Debtors certain Avoidance Actions, which Avoidance Actions are deemed waived and released by Sellers as of Closing Date.  The sale and assignment to Purchaser and waiver and released by the Sellers of such Avoidance Actions is fair and reasonable, and exchange for fair value.

NN.      Time is of the essence in consummating the Sale.  In order to maximize the value of the Purchased Assets, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Agreement.  As set forth in the Findings above, the Purchaser is acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in Closing the transactions

contemplated by the Agreement at any time on or after the entry of this Order.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rule 6004 and 6006.

OO.     The legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties-in-interest.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Sale Motion as it pertains to the Sale and the Agreement is GRANTED as set forth herein.  The Sale Motion complies with all aspects of Local Rule 6004-1.

2.      All objections, reservations of rights regarding, or other responses to, the Sale Motion or the relief requested therein, the Agreement, the Sale, entry of this Order, or the relief granted herein, including, without limitation, any objections to Cure Costs or relating to the cure of any defaults under any of the Assigned Contracts or the assumption and assignment of any of the Assigned Contracts to the Purchaser by the Debtors, solely as it relates to the relief granted by this Order that have not been adjourned, withdrawn or resolved as reflected on the record at the Sale Hearing are overruled in all respects on the merits with prejudice, except as otherwise set forth herein. All Persons and Entities that failed to timely object to the Sale Motion are deemed to have consented to the relief granted herein for all purposes.

3.      Notice of the Sale Motion, Sale Hearing, Agreement, and the relief granted in this Order was fair, legally sufficient and equitable under the circumstances and complied in all respects with section 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and 6006, the Local Rules, the Assumption and Assignment Procedures, the Bidding Procedures Order, and the orders of the Bankruptcy Court.

31933574.1

*Approval of Sale*

4.      The Agreement and the Sale, including, without limitation, all transactions contemplated therein or in connection therewith and all of the terms and conditions thereof, are hereby approved in their entirety, subject to the terms and conditions of this Order. The failure specifically to include or make reference to any particular provision of the Agreement in this Order shall not impair the effectiveness of such provision, it being the intent of the Court that the Agreement, the Sale and the transactions contemplated therein or in connection therewith are authorized and approved in their entirety.

5.      The Sale of the Purchased Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

6.      The Purchaser is giving substantial consideration under the Agreement, and as provided herein, for the benefit of the Debtors, their estates, and creditors. The consideration to be provided by Purchaser under the Agreement is fair and reasonable and constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), (b) fair consideration under the Uniform Fraudulent Conveyance Act, (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia, and (d) valid and valuable consideration for the releases of any potential Liens pursuant to this Order, which releases shall be deemed to have been given in favor of Purchaser by all holders of Liens of any kind whatsoever against any of the Debtors or any of the Purchased Assets, other than as otherwise expressly set forth in this Order. The consideration provided by Purchaser for the Purchased Assets is fair and reasonable and may not be avoided by section 363(n) of the Bankruptcy Code.

7.      The Agreement and the Sale, including, without limitation, all transactions contemplated therein or in connection therewith and all of the terms and conditions thereof, are hereby approved in their entirety, subject to the terms and conditions of this Order. The failure specifically to include or make reference to any particular provision of the Agreement in this Order shall not impair the effectiveness of such provision, it being the intent of the Court that the Agreement, the Sale and the transactions contemplated therein or in connection therewith are authorized and approved in their entirety.

8.      The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assigned Contracts as part of the Sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Order.

9.      Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Agreement, as the case may be.

10.     The Debtors and the Purchaser are hereby authorized to fully assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and the Sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other

instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Purchased Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Bankruptcy Court. The Purchaser shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to its obligations to do so have been met, satisfied or waived.

11.     The Debtors, the Purchaser and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Bankruptcy Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous

action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.

12.     The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Delaware, and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby. Pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant to this Order shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of an order confirming a plan, the appropriate Governmental Authority or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

31933574.1

- 23 -

*Transfer of Assets*

13.      Except as otherwise set forth in this Order, effective as of the consummation of the Sale at Closing, pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Sale of the Purchased Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all rights, titles and interests in and to the Purchased Assets, free and clear of all Liens, Claims, Encumbrances and Interests of any kind, other than Assumed Liabilities and Permitted Encumbrances.  The assumption of any Assumed Liability by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtors of all liability with respect to any Assumed Liabilities.  Effective upon the consummation of the Sale at Closing, the Purchaser shall acquire the Purchased Owned Real Property free and clear of all Liens, Claims, Encumbrances and Interests of any kind, other than Assumed Liabilities and Permitted Encumbrances, pursuant to section 363(f) of the Bankruptcy Code, and all Liens, Claims, Encumbrances and Interests in favor of any Governmental Authority pursuant to any grant agreement, are expressly extinguished and shall attached to the proceed of sale in accordance with their relative priorities.

14.      Except to the extent specifically provided in the Agreement or this Order, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b), 363(f) and 365 of the Bankruptcy Code, to sell the Purchased Assets to the Purchaser.  Except to the extent specifically provided in the Agreement or this Order, effective upon the consummation of the Sale at Closing, the sale of the Purchased Assets vests the Purchaser with all right, title and interest to the Purchased Assets free and clear of any and all Liens, Claims, Encumbrances and Interests and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or

unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise.  All such Liens, Claims, Encumbrances and Interests shall attach to the proceeds of the Sale, in the order of their priority, with the same priority, validity, force, and effect as such Liens, Claims, Encumbrances and Interests had immediately prior to the consummation of such Sale, subject to all claims and defenses the Debtors may possess with respect thereto. All proceeds of the Sale shall be remitted to the Debtors, subject to the terms of the DIP Order and any other applicable order of the Court.  The Sale Motion shall be deemed to provide sufficient notice as to the Sale of the Purchased Assets free and clear of Liens, Claims, Encumbrances and Interests in accordance with Local Rule 6004-1.  Following the Closing Date and upon the occurrence of the Closing and the consummation of the Sale, no holder of any Liens, Claims, Encumbrances and Interests, other than Assumed Liabilities or Permitted Encumbrances, in the Purchased Assets may interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to such Liens, Claims, Encumbrances and Interests, or any actions that the Debtors may take in their Chapter 11 Cases and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order. All Liens, Claims, Encumbrances and Interests with respect to the Excluded Assets will continue in, under, and against the Excluded Assets with the same priority, validity, force, and effect as such Liens, Claims, Encumbrances and Interests now have.

15.    The sale of the Purchased Assets is not subject to avoidance by any person or for any reason whatsoever, including, without limitation, pursuant to section 363(n) of the Bankruptcy

Code and the Purchaser and the Purchaser Parties shall not be subject to damages, including any costs, fees, or expenses under section 363(n) of the Bankruptcy Code.

16.     The provisions of this Order authorizing the Sale of the Purchased Assets free and clear of Liens, Claims, Encumbrances and Interests upon the consummation of the Sale at Closing, other than the Assumed Liabilities and Permitted Exceptions, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.  All such Liens, Claims, Encumbrances and Interests are to attach to the proceeds of the Sale, in the order of their priority, with the same priority, validity, force, and effect as such Liens, Claims, Encumbrances and Interests had immediately prior to the consummation of such Sale.

17.     On, before or after the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances and Interests of any kind against the Purchased Assets (other than Assumed Liabilities and Permitted Encumbrances) upon the consummation of the Sale at Closing, as such Liens, Claims, Encumbrances and Interests may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances and Interests in or against the Purchased Assets that are not Assumed Liabilities or Permitted Encumbrances shall not have delivered to the Debtors prior to, at or after the Closing after request therefor, in proper form for filing and  executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances and Interests that the person or entity has with respect to the Purchased Assets, the Debtor or the Purchaser, may, in their sole option and at their sole discretion, execute

31933574.1

and file on behalf and in the stead of such creditor any such document as may be necessary to evidence the discharge on any Lien, Claim or Encumbrance in or against the Purchased Assets that are not Assumed Liabilities or Permitted Encumbrances.  Nothing herein is intended to affect or limit the provisions of paragraphs 12, 13, 14 or 16 of this Order.  Each filing office, recording office or other registry where Liens, Claims, Encumbrances and Interests in or against the Purchased Assets are filed or recorded is authorized and directed to release such Liens, Claims, Encumbrances and Interests in or against the Purchased Assets based upon the filing of a certified copy of this Order.  Contemporaneously with the consummation of the Sale at Closing and application of the proceeds thereof in accordance with the terms of the DIP Order, DIP Agent and Prepetition ABL Administrative Agent shall have filed, or shall have agreed to file contemporaneously with such Sale at Closing and application of proceeds, all relevant termination statements or amendments, as applicable, with respect to its liens on the Purchased Assets.

18.    To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date and upon the consummation of the Sale at Closing, to operate under any transferred license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date and upon the consummation of the Sale at Closing.

19.    Except as otherwise set forth in this Order, all of the Debtors' interests in the Purchased Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the consummation of the Sale at Closing, transferred to and vested in the Purchaser free and clear of all Liens, Claims, Interests and Encumbrances, other than the Assumed Liabilities,

and Permitted Encumbrances. Upon the occurrence of the consummation of the Sale at Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

20.     Except as otherwise expressly provided in the Agreement or this Order, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request. Any proceeds of accounts receivable owned by the Purchaser following the Closing but received by the Debtors or a different purchaser of assets of the Debtors, shall remain property of the Purchaser, and upon receipt by such party shall be held in trust for the benefit of the Purchaser and remitted to the Purchaser as soon as practicable. Any proceeds of accounts receivable that are not Purchased Assets but received by Purchaser shall not be property of the Purchaser and shall be held in trust by Purchaser for the benefit of the Debtors or a different purchaser of assets of the Debtors and remitted to such party as soon as practicable.

21.     Subject to the terms, conditions, and provisions of this Order, all Entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (a) with the ability of the Debtors to sell and transfer the Purchased Assets to Purchaser in accordance with the terms of the Agreement and this Order, and (b) with the ability of the Purchaser to acquire, take possession of, use and operate the Purchased Assets in accordance with the terms of the Agreement and this Order.

22.     Except as otherwise provided in the Agreement, and pursuant to section 6.5(e) of the Agreement, effective as of the Closing, the Sellers shall forever release and irrevocably waive all of the Debtors' Waived Avoidance Actions, which are deemed part of the Purchased Assets.

23.     As set forth in Agreement, the Debtors and the Purchaser are exchanging releases of certain claims, which releases are hereby approved.

24.     Upon the consummation of the Sale at Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets to Purchaser and the Debtors' interests in the Purchased Assets acquired by Purchaser pursuant to the terms of the Agreement.

***Assigned Contracts and Assumed Leases***

25.     Pursuant to Section 2.1(b), (c) and (j) of and Schedule 2.1(b), (c) and (j) to the Agreement, the assumption by the Debtors of the Assigned Contracts and the assignment of such contracts to the Purchaser is hereby approved.

26.     The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assigned Contracts to Purchaser free and clear of all Liens and Liabilities, and to execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to Purchaser as provided in the Agreement. Cure Costs shall be paid by the Purchaser subject to the terms of, and in accordance with, the terms of the Agreement and Bidding Procedures Order. The Cure Costs are hereby fixed at the amounts set forth in the Cure Notice or as otherwise determined by the Court and as set forth in Schedule 1 attached hereto and by this reference incorporated herein. Payment of the Cure Costs shall be in full satisfaction and cure of any and all defaults required to be cured with respect to the Assigned Contracts under section 365(b)(1) of the Bankruptcy Code. Subject to paragraphs 25 through 31 herein, Purchaser has also provided adequate assurance of

31933574.1

future performance under the Assigned Contracts in satisfaction of section 365 of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Non-Debtor Counterparties to such Assigned Contracts. In accordance with the Assumption and Assignment Procedures and the terms of this Order and subject to paragraphs 25 through 31 herein, following the Closing, Purchaser shall be fully and irrevocably vested with all of the Debtors' right, title and interest in and under the Assigned Contracts in connection with the Purchased Assets, free and clear of any Liens, Claims, Encumbrances and Interests, and each Assigned Contract shall be fully enforceable by the Purchaser in accordance with its respective terms and conditions, except as limited by this Order. In accordance with the Assumption and Assignment Procedures and subject to paragraphs 25 through 31, following assignment of the Assigned Contracts to Purchaser, the Debtors shall be relieved from any further liability with respect to such Assigned Contracts. Purchaser acknowledges and agrees that from and after the Closing, or any later applicable effective date of assumption with respect to a particular Assigned Contract, subject to and in accordance with the Agreement, it shall comply with the terms of each Assigned Contract in its entirety, unless any such provisions are not enforceable pursuant to the terms of this Order. The assumption by the Debtors and assignment to Purchaser of any Assigned Contract shall not be a default under such Assigned Contract. To the extent provided in the Agreement, the Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

27.     The Debtors served all Non-Debtor Counterparties to the Assigned Contracts with the Potential Assumption and Assignment Notice and the Confirmation Notice (as defined in the Potential Assumption and Assignment Notice), and the deadline to object to the Cure Costs and adequate assurance of future performance with respect to the Purchaser has passed. Accordingly,

unless an objection to the proposed assumption and assignment of an Assigned Contract (including whether applicable law excuses a Non-Debtor Counterparty from accepting performance by, or rendering performance to, Purchaser), the proposed Cure Costs or the adequate assurance of future performance information with respect to Purchaser was filed and served before the applicable deadline, each Non-Debtor Counterparty to an Assigned Contract is forever barred, estopped and permanently enjoined from asserting against the Debtors or Purchaser, their respective affiliates, successors or assigns or the property of any of them, any objection to assignment or default existing as of the date of the Cure Costs/Assignment Objection Deadline or Post-Auction Objection Deadline (each as defined in the Assumption and Assignment Procedures) if such objection or default was not raised or asserted prior to or at the appropriate Cure Costs/Assignment Objection Deadline or Post-Auction Objection Deadline.

28.    All of the requirements of sections 365 of the Bankruptcy Code, including without limitation, the demonstration of adequate assurance of future performance, have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to Purchaser, solely with respect to the Assigned Contracts that are not subject to an unresolved Cure Cost/Assignment Objection or Post-Auction Objection. Purchaser has satisfied its adequate assurance of future performance requirements with respect to the Assigned Contracts that are not subject to an unresolved Cure Cost/Assignment Objection or Post-Auction Objection, and has demonstrated it is sufficiently capitalized or otherwise able to comply with the necessary obligations under those Assigned Contracts.

29.    To the extent a Non-Debtor Counterparty to an Assigned Contract failed to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined as set forth on the relevant Potential Assumption and Assignment Notice as to each Non-Debtor

Counterparty and any such Non-Debtor Counterparty shall be barred, and forever prohibited from challenging, objecting to or denying the validity and finality of the Cure Cost as of such date.

30.     Upon the Debtors' assumption and assignment of the Assigned Contracts to the Purchaser under the provisions of this Order and any additional orders of the Court and the payment of any Cure Cost in accordance with the Agreement or any applicable order, no default or other obligations arising prior to the Closing Date shall exist under any Assigned Contract, and each Non-Debtor Counterparty is forever barred and estopped from (a) declaring a default by the Debtors or the Purchaser under such Assigned Contract, (b) raising or asserting against the Debtors or the Purchaser (or its designee(s)), or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, or (c) taking any other action against the Purchaser or its designee(s) as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract, in each case in connection with the Sale. Each Non-Debtor Counterparty is also forever barred and estopped from raising or asserting against the Purchaser or its designee(s)any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the closing of the Sale.

31.     With respect to objections to any Cure Cost/Assignment Objections and Post-Auction Objections relating to the Assigned Contracts that remain unresolved as of the Sale Hearing, such objections shall be resolved in accordance with the procedures approved in the Assumption and Assignment Procedures. Consideration of unresolved Cure Cost/Assignment Objections relating to assignment of Assigned Contracts and Post-Auction Objections relating to the Assigned Contracts, unless otherwise ordered by the Court or with the consent of the Non-

Debtor Counterparty to any Assigned Contract that is subject to a Cure Costs/Assignment Objection relating to such assignment or Post-Auction Objections relating to the Assigned Contract, shall be adjourned to a date to be determined; provided, however, that (a) any Assigned Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection, and (b) such undisputed Cure Cost shall be promptly cured on or after the Closing Date or as otherwise agreed to by the Debtors, Purchaser and the applicable Non-Debtor Counterparty by payment of the applicable Cure Cost in accordance with the terms of the Agreement.

32.    With respect to the Assigned Contracts, in connection with the Sale: (a) the Debtors may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtors may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that directly or indirectly prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of each Assigned Contract have been satisfied; and (d) effective upon the Closing Date, or any later applicable effective date of assumption with respect to a particular Assigned Contract, the Assigned Contracts shall be transferred and assigned to, and from and following the Closing, or such later applicable effective date, and the Assigned Contracts shall remain in full force and effect for the benefit of the Purchaser, notwithstanding any provision in any Assigned Contract (including those of the type

31933574.1

described in sections 365(b)(2) and (e) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Purchaser shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contract and the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption by the Debtors and assignment to the Purchaser, except as otherwise provided in the Agreement. To the extent any provision in any Assigned Contract assumed and assigned pursuant to this Order (i) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption and assignment (including, without limitation, any "change of control" provision), or (ii) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (A) the commencement of the Debtors' Chapter 11 Cases, (B) the insolvency or financial condition of any of the Debtors at any time before the closing of the Debtors' Chapter 11 Cases, (C) the Debtors' assumption and assignment of such Assigned Contract, (D) a change of control or similar occurrence, or (E) the consummation of the Sale, then such provision shall be deemed modified in connection with the Sale so as not to entitle the Non-Debtor Counterparty to prohibit, restrict, or condition such assumption and assignment, to modify, terminate, or declare a breach or default under such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including without limitation, any such provision that purports to allow the Non-Debtor Counterparty to terminate or recapture such Assigned Contract, impose any penalty, additional payments, damages, or other financial accommodations in favor of the Non-Debtor Counterparty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith. All such provisions constitute unenforceable anti-assignment provisions that are void

and of no force and effect in connection with the Sale pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

33.     Except as otherwise specifically provided for by order of the Court, all defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing Date or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts (in each case, without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be promptly cured pursuant to the terms of the Agreement and this Order on or after the Closing Date or as otherwise agreed to by the Debtors, Purchaser and the applicable Counterparty by the payment of the applicable Cure Cost by the Debtors, in accordance with the Agreement. The Purchaser shall have no liability arising or accruing under the Assigned Contracts on or prior to the Closing, except as otherwise expressly provided in the Agreement or this Order.

***Additional Provisions***

34.     Effective upon the Closing, each Debtor, on behalf of itself and its estate, shall acknowledge that it has no known claim, counterclaim, setoff, recoupment, action or cause of action of any kind or nature whatsoever against the Purchaser (collectively, the "Released Claims"). Should any Released Claims nonetheless exist, each Debtor, on behalf of itself and its estate, hereby (i) releases and discharges the Purchaser from any claim, cause of action, liability or obligation whatsoever with respect to the Released Claims and (ii) releases, waives and discharges all of the Released Claims against the Purchaser, provided however, that the foregoing release shall not apply to any claim or cause of action of any kind or nature (a) arising under or relating to the Agreement; or (b) for indemnification or contribution related to any third-party claim.

35.     The Debtors who are Sellers under the Agreement of their trademarked corporate names are hereby authorized and empowered, upon and in connection with the Closing, to change their corporate names and the caption of these Chapter 11 Cases, consistent with applicable law. The Debtors shall file a notice of change of case caption, containing the new caption and the proposed new corporate names of the applicable Debtors, within ten (10) business days of the Closing, and the change of case caption for these Chapter 11 Cases shall be deemed effective as of the Closing.

36.     Each and every Governmental Authority is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

37.     To the extent permitted by section 525 of the Bankruptcy Code, no Governmental Authority may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transaction contemplated by the Agreement.

38.     The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' obligations or liabilities other than the Assumed Liabilities as set forth in the Agreement or this Order, and the Purchaser has not purchased any of the Excluded Assets.  Consequently, all persons, Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Liens, Claims, Encumbrances and Interests on such Purchased Assets based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Purchased Assets, including asserting any setoff, right of subrogation of any kind, to recover any Liens, Claims, Encumbrances and Interests or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement.  Except as otherwise set

forth in this Order, all persons holding or asserting any Interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens, Claims, Encumbrances and Interests or cause of action against the Purchaser or the Purchased Assets for any liability associated with the Excluded Assets.

39.     The Purchaser is not a "successor" or alter-ego to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Agreement, and the Sale Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1. Except to the extent the Purchaser assumes the Assumed Liabilities pursuant to the Agreement, neither the purchase of the Purchased Assets by the Purchaser or its affiliates, nor the fact that the Purchaser or its affiliates are using any of the Purchased Assets previously operated by the Debtors, will cause the Purchaser or any of its affiliates to be deemed a successor or alter-ego in any respect to the Debtors' business within the meaning of, or in connection with, (i) any foreign, federal, state or local revenue, pension, ERISA, including, but not limited to any withdrawal liability, tax, labor, employment, antitrust, environmental laws, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), (ii) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or  regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (iii**)** except as expressly set forth in the Agreement any employment or labor agreements, collective bargaining agreements, including the Collective

Bargaining Agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (iv) any pension, health, welfare, compensation or other employee or retiree benefit plans, agreements, practices and programs, including, without limitation, Sellers' Plans and any pension plan of the Debtors, (v) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements, collective bargaining agreements, or pension, health, welfare, compensation or other employee or retiree benefit plans, agreements, practices and programs, and any obligations that might otherwise arise from any such cessation, dismissal or termination pursuant to any law of the United States, any State therein, or any other jurisdiction in the world, whether such obligations arise under any contract, agreement, statute, regulation, ordinance, common law, public policy, constitution or any other source, including without limitation, the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or WARN, (vi) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.*, (vii) any liabilities, debts or obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Purchased Assets prior to Closing, and (ix) any litigation.  The Purchaser shall have no successor, alter-ego or vicarious liabilities of any kind or character.

31933574.1

40.     Except with respect to Assumed Liabilities and Permitted Encumbrances, all persons and entities, including, but not limited to, all debt security holders, equity security holders, Governmental Authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' Business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting, against the Purchaser, any of its affiliates, its successors or assigns, their property or the Purchased Assets, such persons' or entities' Liens, Claims, Encumbrances or Interest, other than Assumed Liabilities and Permitted Encumbrances, in and to the Purchased Assets, including, without limitation, the following actions:  (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, any of its affiliates, successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, any of its affiliates, successors, assets or properties; (iii) creating, perfecting or enforcing any Lien or other Claim against the Purchaser, any of its affiliates, successors, assets or properties; (iv) asserting any setoff or right of subrogation of any kind against any obligation due Purchaser, any of its affiliates or successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization

to operate any of the Purchased Assets or conduct any of the business operated with the Purchased Assets.

41.     Subject to the terms of the Agreement and the terms of this Order, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Bankruptcy Court; provided, however, any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.

42.     The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtors and the Purchaser that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

43.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and transactions contemplated by the Agreement.

44.     Pursuant to the terms of and subject to the conditions contained in the Agreement, following the Closing, the Debtors, their successors and assigns and any trustee in bankruptcy will have access to the Debtors' books and records subject to the terms of, and for the specified purposes set forth in, and in accordance with, Sections 7.1(c) and 7.7 of the Agreement.

45.     To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

46.     Notwithstanding that the Debtors' cases are not substantively consolidated, this Order shall have the same effect and binding nature in each of the Debtors' cases as if entered in each case as a separate order.

31933574.1

47.     This Order and the Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in applicable chapter 7 cases if these cases are converted from chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.

48.     The provisions of this Order are non-severable and mutually dependent.

49.     Nothing in any order of this Bankruptcy Court or contained in any plan of reorganization or liquidation confirmed in the Chapter 11 Cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

50.     Notwithstanding Bankruptcy Rules 6003, 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement.  In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

31933574.1

- 41 -

51.     The Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

52.     Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

53.     After giving due consideration to the facts, circumstances, and conditions of the Agreement, the Sale is consistent with the Debtors' privacy policies concerning personally identifiable information and no showing was made that the sale of any personally identifiable information contemplated in the Agreement, subject to the terms of this Order, would violate applicable non-bankruptcy law.

54.     From time to time, as and when requested by any party, each party to the Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the Agreement.

55.     This Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assigned Contracts, disputes with any third parties related to the Purchased Assets and any Assigned Contracts, and all issues and disputes

arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims, Encumbrances and Interests, and the attachment of such Liens, Claims, Encumbrances and Interests to the proceeds of the Sale, if any.  This Bankruptcy Court shall specifically retain jurisdiction to hear and determine all disputes between the Purchaser and the Debtors or any other Entity concerning the ownership, entitlement and/or turnover of any proceeds of accounts receivable owned by the Purchaser or its designee(s) which arose out of or in connection with the Purchased Assets.

Dated:  August __, 2024
       Wilmington, Delaware

                                          _____
                                          MARY F. WALRATH
                                          UNITED STATES BANKRUPTCY JUDGE

**SCHEDULE 1**

| Debtor | Contract Counterparty | Description of Contract | Cure Amount |
|---|---|---|---|
| Powder River Transportation Services, Inc. | North Platte Agency LLC | Lease - 500 Willow Dr, Douglas, WY 82633 | $311.67[*] |
| Powder River Transportation Services, Inc. | Livingston Landlady | Lease - 210 Loves Lane Livingston MT 59047 | $733.33[*] |
| Powder River Transportation Services, Inc. | Livingston Landlady | Lease - 705 N N St., Livingston MT 59047 | $522.50[*] |
| Powder River Transportation Services, Inc. | HRT Rentals | Lease - 175 Main Boulder Road Fishing Hole 'B' | $421.67[*] |
| Powder River Transportation Services, Inc. | Kristy M Lewis | Lease - PO Box 904, Newcastle WY 82701 | $82.50[*] |
| Powder River Transportation Services, Inc. | Lone Tree Village 108 | Lease - 401 South Russel Ave #108 Gillette WY 82633 | $344.67[*] |
| Powder River Transportation Services, Inc. | Lone Tree Village 24 | Lease - 401 South Russel Ave # 24 Gillette WY 82633 | Included in Amount Above[*] |
| Powder River Transportation Services, Inc. | 4w Properties | Lease - 120 Meadowlark Street, Glenrock WY 82637 | $3,903.33 |
| Powder River Transportation Services, Inc. | Schon LLC | Lease - 7568 Hwy 59, Wright WY 82718 | $6,000 |
| Powder River Transportation Services, Inc. | St Mary's Catholic Church | Lease - 41 View Vista Dr, Livingston MT 59047 | $0 |
| Powder River Transportation Services, Inc. | HDDA- Billings, LLC | Lease - 5500 Midland Rd, Billings MT 59102 | $0 |
| Powder River Transportation Services, Inc. | Columbus 1 Re2 LLC | Lease - 602 8th Ave. North, Columbus MT 59109 | $0 |
| Powder River Transportation Services, Inc. | Montana Works | Lease - Laurel MT | $0 |
| Powder River Transportation Services, Inc. | Gasstop Two | Lease - Union Chapel Road | $3,493.33 |
| Powder River Transportation Services, Inc. | Cook Properties | Lease - 6830 Commercial Ave, Billings MT 59102 | $0 |
| Powder River Transportation Services, Inc. | Park County Fair | Lease - 46 View Vista Dr, Livingston MT 59047 | $0 |
| Powder River Transportation Services, Inc. | Beartooth Industries | Lease - 7042 Highway 212, Red Lodge MT 59068 | $0 |
| Powder River Transportation Services, Inc. | Susan Carter | Lease - 542 Broadway, Red Lodge, MT 59068 | $0 |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 1700 East Hwy. 14-16, Gillette, WY - Building | $32,845.12[**] |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 1700 East Hwy. 14-16, Gillette, WY -Parking lot "A" | $4,398[**] |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 1700 East Hwy. 14-16, Gillette, WY -Parking lot "B" | $1,600[**] |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 400 Stetson Drive (Arch Coal Parking lot) | $2,050[**] |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 1611 E 6th Street (Arch & Cloud Peak parking lot) | $1,575[**] |

[*] Cure Costs associated with these designated leases shall not be counted towards the Cure Costs Cap of $46,200.00 and shall be borne by the Purchaser.

[**] Cure Costs subject to resolution of pending informal objection.

| Debtor | Contract Counterparty | Description of Contract | Cure Amount |
|---|---|---|---|
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 685 Smylie Road, Douglas, WY(Building) | $10,328.96** |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 685 Smylie Road, Douglas, WY(Parking Lot) | $1,393.17** |
| Powder River Transportation Services, Inc. | Montana Public Safety | Lease - #14 Midway Dr, Red Lodge MT 59608 | $0 |
| Powder River Transportation Services, Inc. | Peabody Powder River Services, LLC | Charter Bus Transportation Services Agreement, dated as of August 20, 2019, as amended by that certain First Amendment, dated as of July 29, 2022 | $0 |
| Powder River Transportation Services, Inc. | Peabody Powder River Services, LLC | Charter Bus Transportation Services Agreement, dated as of September 30, 2015, as amended by that certain First Amendment, dated as of January 20, 2017, and that certain Second Amendment, dated as of March 1, 2021 | $0 |
| Powder River Transportation Services, Inc. | Stillwater Mining Company d/b/a Sibanya-Stillwater | Contract #4036 (OS), executed as of March 14, 2023 | $0 |
| Powder River Transportation Services, Inc. | Navajo Transitional Energy Company, LLC | Agreement for the Supply of Products and/or Services (Contract No. P20193001201), Statement of Work 01, effective as of February 1, 2020, and Statement of Work 02, effective as of April 1, 2022, as amended by Amendment Number 01, dated as of February 24, 2022 (Antelope Mine Contract) | $0 |
| Transportation Management Services, Inc. DBA Lenzner Coach Line. | Whiting-Turner PJ Dick JV | Whiting-Turner PJ Dick JV subcontract, dated as of July 25th, 2023 | |
| Powder River Transportation Services, Inc. | Wyoming Machinery Company | Transportation Agreement, dated as of June 7, 2019 | $0 |
| Coach USA, Inc. | Bridgestone Americas Tire Operations, LLC | Agreement, dated as of August 19, 2019, Solely with respect to tires currently on the Purchased Vehicles listed on APA Schedule 2.1(q) | $0 |

- 45 -

| Debtor | Contract Counterparty | Description of Contract | Cure Amount |
|---|---|---|---|
| Butler Motor Transit, Inc | AFL-CIO and Local 298 (formerly 1931) of the Eastern States Joint Board | Memorandum of Agreement for the period 5/1/2022 – 4/30/2025 in relation to mechanics (unsigned)[4]*** | $0 |

***  Terms are being accepted subject to necessary changes needed to provide substantially equivalent benefits and policies to Purchaser's benefit plans and policies.

31933574.1

**EXHIBIT B**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| COACH USA, Inc., *et al.*,[1] | Case No. 24-11258 (MFW)<br>(Jointly Administered) |
| Debtors. | Ref. Docket Nos. 20, 241, 282, 288,<br>297, 313, 348, 499, and 503 |

**ORDER AUTHORIZING AND APPROVING (I) PURCHASE AGREEMENT AMONG DEBTORS AND GREAT PLAINS CREW CHANGE COMPANY, LLC, (II) THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, ENCUMBRANCES, AND OTHER INTERESTS, (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Sale Motion")[2] filed by the above captioned debtors and debtors-in-possession (collectively, the "Debtors") seeking entry of an order (the "Order"), pursuant to sections 105(a), 363, 365, and 1113 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1, 6004-1, 9006-1, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing and approving (i)

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/CoachUSA.  The Debtors' mailing address is 160 S Route 17 North, Paramus, NJ 07652.

[2] The Sale Motion was filed on June 12, 2024 as *Debtors' Motion for Entry of (A) An Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Designating Stalking Horse Bidders and Stalking Horse Bidder Protections, (III) Scheduling Auction for and a Hearing to Approve the Sale of Assets, (IV) Approving Notice of Respective Date, Time and Place for Auction and for a Hearing on Approval of the Sale, (V) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (VI) Approving Form and Manner of Notice Thereof, and (VII) Granting Related Relief; and (B) Orders Authorizing and Approving (I) The Sale of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, (II) The Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases, and (III) Granting Related Relief.*

the sale of certain of the Debtors' ~~core~~ assets (the "Sale") free and clear of all Liabilities, Indebtedness and Encumbrances (other than Assumed Liabilities and Permitted Encumbrances), pursuant to the terms of the Asset Purchase Agreement dated July 5, 2024 between the Debtors identified as Sellers set forth on Schedule A thereto ("Sellers") and Great Plains Crew Change Company, LLC or its designee(s) ("Purchaser"), a copy of which is annexed hereto as Exhibit A (as amended, supplemented, or otherwise modified by the parties, and together with any schedules and exhibits thereto, the "Agreement") which is incorporated herein by reference,[3] (ii) the assumption and assignment of certain executory contracts and unexpired leases, and (iii) granting related relief; and this Bankruptcy Court having entered an order dated July 9, 2024 [Docket No. 241] (the "Bidding Procedures Order"), (i) approving bidding procedures in connection with the sale of substantially all of the Debtors' assets, (ii) designating Stalking Horse Bidders and Bid Protections, (iii) scheduling an auction for (the "Auction") and a hearing to approve the sale (the "Sale Hearing") of assets, (iv) approving notice of respective date, time and place for auction and for a hearing on approval of the sale, (v) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases, (vi) approving form and manner and notice thereof, and (vii) granting related relief; and the Auction having been cancelled in accordance with the Bidding Procedures; and the Sellers having determined, in their business judgment, that the Qualified Bid by Purchaser for the Purchased Assets was the highest and otherwise best Qualified Bid received with respect to the Purchased Assets; and the Sellers having filed the a notice of successful bidder [Docket No. 503], designating Purchaser or its designee as the Successful Bidder for the Purchased Assets; and the Bankruptcy Court having

---

[3] Capitalized terms not defined herein shall have the meanings ascribed to such terms as in the Agreement, or if not defined in the Agreement, in the Sale Motion

31933574.1

- 2 -

~~LEGAL02/44699916v2~~

jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157(b)(2) and 1334; and consideration of the Sale Motion, the relief requested therein,

and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and

the appearance of all interested parties and all responses and objections to the Sale Motion

having been duly noted in the record of the Sale Hearing; and upon the record of the Sale

Hearing, and all other pleadings and proceedings in these Chapter 11 Cases, including the Sale

Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the

Debtors, their estates, their creditors and all other parties in interest; and after due deliberation

and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**

A.      The findings and conclusions set forth herein constitute the Bankruptcy Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to

this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law,

they are adopted as such.  To the extent any of the following conclusions of law constitute

findings of fact, they are adopted as such.

C.      The Bankruptcy Court has jurisdiction over this matter and over the property of

the Debtors' estates, including the Purchased Assets to be sold, transferred or conveyed pursuant

to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the District of*

*Delaware*, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. §

157(b)(2).  Venue of these Chapter 11 Cases and the Sale Motion in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409. The Court may enter a final order with respect to the

Sale Motion, the Agreement, the transactions contemplated thereby, and all related relief, in each case, consistent with Article III of the United States Constitution.

D.      This Order constitutes a final and appealable order as set forth in 28 U.S.C. § 158(a), except as otherwise set forth herein.

E.      The Purchased Assets constitute property of the Debtors' estates, and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

F.      The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) sections 105(a), 363, 365, 503, 507, and 1113 of Bankruptcy Code, (ii) Bankruptcy Rules 2002, 6003, 6004, 6006, 9007, 9008, and 9014 and (iii) Local Rules 2002-1, 6004-1, 9006-1, and 9013-1(m).

G.      On June 11, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

H.      On June 25, 2024, the Office of the United States Trustee (the "UST") appointed an official committee of unsecured creditors (the "Committee").

I.      On July 19, 2024, the Court entered the *Final Order (I) Authorizing the Applicable Debtors to Obtain Postpetition Secured Financing; (II) Authorizing the Applicable Debtors' Use of Cash Collateral; (Iii) Granting Adequate Protection to Prepetition ABL Administrative Agent and the Other Prepetition Secured Parties; and (IV) Granting Related Relief* [Docket No. 306] (as amended, supplemented or otherwise modified from time to time, the "DIP Order").

***Proper Notice and Opportunity to Object***

J.      As evidenced by the affidavits of service filed with the Bankruptcy Court, proper, timely, adequate, and sufficient notice of the Sales, Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with section 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the Local Rules, and in compliance with the Bidding Procedures Order and the Agreement.

K.      As evidenced by the affidavits of service filed with the Bankruptcy Court, proper, timely, adequate, and sufficient notice of the assumption and assignment of the Assumed Contracts, Assumed Equipment Leases, and Assumed Real Property Leases (collectively, the "Assigned Contracts") have been provided in accordance with sections 365 and 1113 of the Bankruptcy Code.

L.      On July 16, 2024, the Debtors mailed notice of the sale to, among others, (a) the Office of the United States Trustee for the District of Delaware; (b) holders of the 30 largest unsecured claims on a consolidated basis against the Debtors; (c) proposed counsel for any official committee appointed in the Chapter 11 Cases; (d) counsel to Wells Fargo Bank, National Association in its capacity as DIP Agent and Prepetition ABL Administrative Agent; (e) counsel to the Stalking Horse Bidders; (f) the United States Attorney for the District of Delaware; (g) the attorneys general for each of the states in which the Debtors conduct business operations; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; (j) all known taxing authorities for the jurisdictions to which the Debtors are subject; (k) all environmental authorities having jurisdiction over any of the Assets; (l) all state, local or federal agencies, including any departments of transportation, having jurisdiction over any aspect of the Debtors' business operations; (m) all entities known or reasonably believed to have asserted a lien on any of the Assets; (n) counterparties to the Debtors' executory contracts and unexpired leases; (o) all

persons that have expressed to the Debtors an interest in a transaction with respect to the Assets during the past six (6) months; (p) the State of Texas, acting through the Texas Department of Transportation; (q) the office of unclaimed property for each state in which the Debtors conduct business; (r) the Pension Benefit Guaranty Corporation; (s) the Surface Transportation Board and all other Governmental Authorities (as defined in the NewCo Stalking Horse APA) with regulatory jurisdiction over any consent required for the consummation of the transactions; (t) the Federal Motor Carrier Safety Administration; (u) the Federal Trade Commission; (v) the U.S. Department of Justice; (w) each of the Unions; (x) all of the Debtors' other known creditors and equity security holders; and (y) those parties who have formally filed a request for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 at the time of service (collectively, the "Sale Notice Parties").

M.      In addition to the foregoing notice, the Debtors posted the Notice of Auction and Sale Hearing  and the relief requested in this Order on the website of the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC on July 16, 2024.

N.      Such notice was sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts or of the entry of this Order is necessary or shall be required.

O.      A reasonable opportunity to object or be heard regarding the requested relief in the Sale Motion and the Order has been afforded to all interested persons and entities, including, without limitation, the Sale Notice Parties.  Other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

*Proper Bases For Sale and Assumption/Assignment of Contracts*

P.     The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Agreement, sell the Purchased Assets and assume and assign the Assigned Contracts under section 363, 365, and 1113 of the Bankruptcy Code prior to confirmation of a plan of reorganization under section 1129 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.  Such business reasons include, but are not limited to, the fact that (i) there is a provision in the Agreement providing for an automatic reduction in the Purchase Price if the Closing is delayed past August 19, 2024, (ii) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated quickly; (iii) the Agreement constitutes the highest and best offer for the Purchased Assets; (iv) the Agreement and the Closing will present the best opportunity to realize the value of the Debtors on a going-concern basis and avoid decline in the Debtors' business; and (v) unless the Sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Agreement, creditors' recoveries may be diminished.

Q.     The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale of the Purchased Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Agreement.  No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate the Sale.

R.     The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtors nor the Purchaser is

entering into the transactions contemplated by the Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims or similar claims.

S.      The Debtors have advanced good, sufficient and sound business reasons for seeking to enter into the Agreement, as more fully set forth in the Sale Motion and as demonstrated at or before the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Purchased Assets, including the assignment of the Assigned Contracts, and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to the Purchaser and the assumption and assignment of the Assigned Contracts is a legal, valid and effective transfer of the Purchased Assets including the Assigned Contracts.

***Good Faith Findings***

T.      The Debtors, Purchaser and their respective counsel and other advisors have complied with the Bidding Procedures Order, the Bidding Procedures, and the Assumption and Assignment Procedures in all respects. Purchaser submitted a Qualified Bid pursuant to the Bidding Procedures approved by the Court, was determined to be the Successful Bidder for the Purchased Assets, and was granted certain Bid Protections in accordance with the Bidding Procedures Order and the Bidding Procedures.

U.      The Debtors and their advisors thoroughly and fairly marketed the Purchased Assets and conducted the related sale process in good faith and in a fair and open manner, soliciting offers to acquire the Purchased Assets from a wide variety of parties. The sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any Person or any entity (as such term is defined in the

Bankruptcy Code, an "Entity") that expressed an interest in acquiring the Purchased Assets, or who the Debtors believed may have an interest in acquiring, and be permitted and able to acquire, the Purchased Assets, to conduct due diligence, make an offer to purchase the Debtors' assets, including, without limitation, the Purchased Assets, and submit higher and otherwise better offers for the Purchased Assets than Purchaser's Successful Bid. The Debtors and Purchaser have negotiated and undertaken their roles leading to the Sale and entry into the Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner. The sale process conducted by the Debtors pursuant to the Bidding Procedures Order and the Bidding Procedures resulted in the highest and otherwise best offer for the Purchased Assets for the Debtors and their estates, was in the best interests of the Debtors, their creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result. The Debtors' determinations that the Agreement constitutes the highest and otherwise best offer for the Purchased Assets and maximizes value for the benefit of the Debtors' estates constitutes a valid and sound exercise of the Debtors' business judgment and are in accordance and compliance with the Bidding Procedures and the Bidding Procedures Order. The Agreement represents fair and reasonable terms for the purchase of the Purchased Assets. No other Person or Entity has offered to purchase the Purchased Assets for greater overall value to the Debtors' estates than the Purchaser. Approval of the Sale Motion (as it pertains to the Sale) and the Agreement and the consummation of the transactions contemplated thereby will maximize the value of each of the Debtors' estates and are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest. There is no legal or equitable reason to delay consummation of the transactions contemplated by the Agreement, including without limitation, the Sale.

V.    Purchaser is not an "insider" or "affiliate" of any of the Debtors as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, managers, or controlling stockholders existed between the Debtors and the Purchaser. The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to all of the Purchased Assets and the relief provided for in the Order.    The Agreement was negotiated at arm's length and entered into in good faith and without collusion or fraud of any kind.    The Purchaser has not engaged in collusion or any conduct that would otherwise control or tend to control the sale price as between or among potential bidders and, therefore, has not violated section 363(n) of the Bankruptcy Code.    Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code; or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the Sale and transfer of the Purchased Assets including the Assigned Contracts to the Purchaser.    In particular, (i) Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) Purchaser in no way induced or caused the chapter 11 filing by the Debtors; (iii) Purchaser has not engaged in any conduct that would cause or permit the Sale or the Agreement to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code by any action or inaction; (iv) no common identity of directors, managers, officers, or controlling stockholders exist between Purchaser, on the one hand, and any of the Debtors, on the other hand; (v) Purchaser complied with the Bidding Procedures and all provisions of the Bidding Procedures Order and the Assumption and Assignment Procedures; (vi) Purchaser agreed to subject its Bid to the competitive Bidding Procedures set forth in the Bidding Procedures Order;

and (vii) all payments to be made, and all other material agreements or arrangements entered into or to be entered into, by Purchaser in connection with the Sale have been disclosed.

W.    The Purchaser has complied in good faith with the Bidding Procedures Order (including the Bidding Procedures) in all material respects.  The Purchaser is entitled to all of the protections and immunities of section 363(m) of the Bankruptcy Code.

X.    The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates. The total consideration provided by the Purchaser for the Purchased Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) constitutes fair consideration and fair value under the Bankruptcy Code, the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), the Uniform Fraudulent Conveyance Act and other similar laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction; (b) is the highest and best value obtainable for the Purchased Assets; (c) will provide a greater recovery to creditors than would be provided by any other available alternative; and (d) constitutes reasonably equivalent value (as that term is defined in each of the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), the Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code). Without limiting the foregoing, no objection was raised to the Sale Motion with respect to the relief granted herein on the basis that the creditors of any particular Debtor were improperly prejudiced by the proposed Sale. Based on the evidence before the Court, the sale consideration under the Agreement constitutes adequate consideration for the Purchased Assets of each Debtor and such consideration does not disadvantage the creditors of any particular Debtor.

***Transfer Free and Clear***

Y.      Except with respect to Assumed Liabilities and Permitted Encumbrances as expressly provided in the Agreement or this Order, effective upon the consummation of the Sale at Closing, the Purchased Assets shall be sold free and clear of all Liabilities, Indebtedness and Encumbrances (including without limitation, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, mechanics' liens, materialman's liens and other consensual and non-consensual liens and statutory liens, judgments, demands, encumbrances, rights of first refusal, offsets, set-offs, contracts, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax liabilities, decrees of any court or foreign or domestic governmental entity, or charges and interests of any kind or nature, if any,  any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or the Debtors' predecessors or affiliates, claims (as that term is used in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual and other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfilled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims arising under any doctrines of successor liability or alter-ego) (collectively,

"Liens, Claims, Encumbrances and Interests"), with such Liens, Claims, Encumbrances and Interests, upon the Sale at Closing, to attach to the proceeds of the Sale, in the order of their priority, to be received by the Debtors in accordance with the Agreement, subject to the terms of the DIP Order and any other applicable order of the Court, and with the same priority, validity, force, and effect as such Liens, Claims, Encumbrances and Interests had immediately prior to the consummation of such Sale, and subject to the same defenses and avoidability, if any, as before the Closing, and the Purchaser would not enter into the Agreement to purchase the Purchased Assets otherwise. All proceeds of the Sale shall be remitted to the Debtors, subject to the terms of the DIP Order and any other applicable order of the Court. All Liens, Claims, Encumbrances and Interests with respect to the Excluded Assets will continue in, under, and against the Excluded Assets with the same priority, validity, force, and effect as such Liens, Claims, Encumbrances and Interests now have.

Z.      The transfer of the Purchased Assets to the Purchaser is a legal, valid and effective transfer of the Purchased Assets, and, except as may otherwise be provided in the Agreement or this Order, shall vest, upon Closing, the Purchaser with all rights, titles and interests to the Purchased Assets free and clear of any and all Liens, Claims, Encumbrances and Interests.  Except as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Purchased Assets being sold by the Debtors.

AA.     The transfer of the Purchased Assets to the Purchaser, free and clear of Liens, Claims, Encumbrances and Interests (other than the Assumed Liabilities and Permitted Encumbrances) upon the consummation of the Sale at Closing, will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests in, under or

against the Purchased Assets, as all such Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever shall attach to the proceeds of the Sale of the Purchased Assets received by the Debtors, subject to the terms of the DIP Order and any other applicable order of the Court, in the order of their priority, with the same priority, validity, force and effect which such Liens, Claims, Encumbrances and Interests had immediately prior to the consummation of such Sale, subject to any claims and defenses the Debtors or other parties may possess with respect thereto. Except as otherwise set forth in this Order, upon consummation of the Sale in accordance with the Agreement and this Order, all persons having Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets, other than Assumed Liabilities and Permitted Encumbrances, shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances and Interests against the Purchaser, any of their assets, property, successors or assigns, or the Purchased Assets.

BB.     The Debtors may sell the Purchased Assets free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever, other than the Assumed Liabilities and Permitted Encumbrances, because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  Those holders of Liens, Claims, Encumbrances and Interests and who did not object, or who withdrew their objections, to the Sale of the Purchased Assets and the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All objections to the Sale Motion have been waived, overruled or resolved by agreement of the parties or as set forth in this Order.  Those holders of Liens, Claims, Encumbrances and Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having

31933574.1

LEGAL02/44699916v2

their Liens, Claims, Encumbrances and Interests, if any, attach to the proceeds of the Sale of the Purchased Assets, if any, ultimately attributable to the property against or in which they claim or may claim any Liens, Claims, Encumbrances and Interests, and with such Liens, Claims, Encumbrances and Interests being subject to treatment by separate order of the Bankruptcy Court.

CC.    The Purchaser would not have entered into the Agreement if the Sale was not free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever, other than the Assumed Liabilities and Permitted Encumbrances, as set forth in the Agreement and herein, or if the Purchaser would, or in the future could, be liable for any such Liens, Claims, Encumbrances and Interests.

DD.    Not selling the Purchased Assets free and clear of all Liens, Claims, Interests and Encumbrances, other than the Assumed Liabilities and Permitted Encumbrances, to the Purchaser would adversely impact the Debtors' estates, and the Sale of Purchased Assets other than free and clear of all Liens, Claims, Interests and Encumbrances, other than the Assumed Liabilities and Permitted Encumbrances, would be of substantially less value to the Debtors' estates.

***Assumption and Assignment of the Assigned Contracts.***

EE.    The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order, the Assumption and Assignment Procedures, and Schedule 2.1(b), (c) and (j) of the Agreement, are integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.  Specifically, the assumption and assignment of the Assigned Contracts (i) are necessary to sell the Purchased Assets to Purchaser, (ii) allow the Debtors to

maximize the value of the Purchased Assets, including the Assigned Contracts, (iii) limit the losses suffered by the counterparties to the Assigned Contracts, and (iv) maximize the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assigned Contracts.

***Cure Notice: Adequate Assurance of Future Performance.***

FF.    As shown by the certificates of service filed with the Court, the Debtors have served upon each non-Debtor counterparty to such contracts (each, a "Non-Debtor Counterparty"), prior to the Sale Hearing, notices, including (i) the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sales* (the "Initial Notice") dated July ~~19~~18, 2024 [Docket No. 297], (~~iii~~ii) *the Notice of Supplemental Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sales* (the "Supplemental Notice") dated July ~~19~~18, 2024 [Docket No. 313], (~~iv~~iii) the *Notice of Second Supplemental Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sales* dated July 25, 2024 [Docket No. 348] (the "Second Supplemental Notice"), and (~~v~~iv) the *Notice of Third Supplemental Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sales* dated August 7, 2024 [Docket No. 499] (the "Third Supplemental Notice") (collectively, the "Potential Assumption and Assignment Notice") that Debtors may wish to assume and assign to the Successful Bidder certain executory contracts and unexpired leases (the "Contracts") pursuant to section 365 of the Bankruptcy Code, and of the related proposed cure costs (if any) due under section 365(b) of the Bankruptcy Code (the "Cure Costs") with respect to such contracts and leases. The service of the Potential Assumption and Assignment Notice was good, sufficient and appropriate under the

circumstances of the Chapter 11 Cases and complied with the Assumption and Assignment Procedures and any orders of the Court, and no other or further notice is required with respect to the Cure Costs or for the assumption and assignment of the Contracts. All Counterparties to the Contracts have had a reasonable and sufficient opportunity to object to the Cure Costs listed on the Potential Assumption and Assignment Notice in accordance with the Assumption and Assignment Procedures. Accordingly, all Counterparties to Contracts who did not object or who withdrew their objections to the Cure Costs listed on the Potential Assumption and Assignment Notice prior to the Sale Hearing are deemed to have consented to such Cure Costs, and all Counterparties to Assigned Contracts who did not file an objection to the assumption by the Debtors of such Assigned Contracts and the assignment thereof to Purchaser prior to the Sale Hearing are deemed to have consented to the assumption of such Assigned Contract and the assignment thereof to Purchaser.

***No Successor or Derivative Liability.***

GG.     The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no common identity between the Debtors and the Purchaser, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates. Other than the Assumed Liabilities, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities and withdrawal liability under Subtitle E of Title IV of ERISA or under WARN, the Sellers' Plans and/or any Collective Bargaining Agreements.

***Record Retention***

HH.     Pursuant to the terms of and subject to the conditions in Sections 7.1(c) and 7.7 of the Agreement, following the Closing, the Debtors, their successors and assigns and any trustee in bankruptcy will have access to the Debtors' books and records for the specified purposes set forth in, and in accordance with, the Agreement.

***Valid and Binding Contract; Validity of Transfer***

II.     The Agreement is a valid and binding contract between the Debtors and Purchaser and shall be enforceable pursuant to its terms. The Agreement and the Sale itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, and any chapter 11 trustee appointed in these Chapter 11 Cases, or in the event the Chapter 11 Cases are converted to a case under chapter 7 of the Bankruptcy Code, a chapter 7 trustee, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person. The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(1) of the Bankruptcy Code and all of the applicable requirements of such sections have been complied with in respect of the Sale.

***Other Provisions***

JJ.     The Sale of the Purchased Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The Sale does not constitute a *sub rosa* chapter 11 plan.

KK.     The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the relief requested in the Sale Motion.

LL.     As set forth in Agreement, the Debtors and the Purchaser are exchanging releases of certain claims.  The exchange of such releases is fair and reasonable, and for fair value.

MM.     As set forth in Agreement, the Purchaser is purchasing from the Debtors certain Avoidance Actions, which Avoidance Actions are deemed waived and released by Sellers as of Closing Date.  The sale and assignment to Purchaser and waiver and released by the Sellers of such Avoidance Actions is fair and reasonable, and exchange for fair value.

NN.     Time is of the essence in consummating the Sale.  In order to maximize the value of the Purchased Assets, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Agreement.  As set forth in the Findings above, the Purchaser is acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in Closing the transactions contemplated by the Agreement at any time on or after the entry of this Order. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rule 6004 and 6006.

OO.     The legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties-in-interest.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Sale Motion as it pertains to the Sale and the Agreement is GRANTED as set forth herein.  The Sale Motion complies with all aspects of Local Rule 6004-1.

2.     All objections, reservations of rights regarding, or other responses to, the Sale Motion or the relief requested therein, the Agreement, the Sale, entry of this Order, or the relief

granted herein, including, without limitation, any objections to Cure Costs or relating to the cure of any defaults under any of the Assigned Contracts or the assumption and assignment of any of the Assigned Contracts to the Purchaser by the Debtors, solely as it relates to the relief granted by this Order that have not been adjourned, withdrawn or resolved as reflected on the record at the Sale Hearing are overruled in all respects on the merits with prejudice, except as otherwise set forth herein. All Persons and Entities that failed to timely object to the Sale Motion are deemed to have consented to the relief granted herein for all purposes.

3.      Notice of the Sale Motion, Sale Hearing, Agreement, and the relief granted in this Order was fair, legally sufficient and equitable under the circumstances and complied in all respects with section 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and 6006, the Local Rules, the Assumption and Assignment Procedures, the Bidding Procedures Order, and the orders of the Bankruptcy Court.

***Approval of Sale***

4.      The Agreement and the Sale, including, without limitation, all transactions contemplated therein or in connection therewith and all of the terms and conditions thereof, are hereby approved in their entirety, subject to the terms and conditions of this Order. The failure specifically to include or make reference to any particular provision of the Agreement in this Order shall not impair the effectiveness of such provision, it being the intent of the Court that the Agreement, the Sale and the transactions contemplated therein or in connection therewith are authorized and approved in their entirety.

5.      The Sale of the Purchased Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

6.      The Purchaser is giving substantial consideration under the Agreement, and as provided herein, for the benefit of the Debtors, their estates, and creditors. The consideration to be provided by Purchaser under the Agreement is fair and reasonable and constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), (b) fair consideration under the Uniform Fraudulent Conveyance Act, (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia, and (d) valid and valuable consideration for the releases of any potential Liens pursuant to this Order, which releases shall be deemed to have been given in favor of Purchaser by all holders of Liens of any kind whatsoever against any of the Debtors or any of the Purchased Assets, other than as otherwise expressly set forth in this Order. The consideration provided by Purchaser for the Purchased Assets is fair and reasonable and may not be avoided by section 363(n) of the Bankruptcy Code.

7.      The Agreement and the Sale, including, without limitation, all transactions contemplated therein or in connection therewith and all of the terms and conditions thereof, are hereby approved in their entirety, subject to the terms and conditions of this Order. The failure specifically to include or make reference to any particular provision of the Agreement in this Order shall not impair the effectiveness of such provision, it being the intent of the Court that the Agreement, the Sale and the transactions contemplated therein or in connection therewith are authorized and approved in their entirety.

8.      The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to the

transfer of the Assigned Contracts as part of the Sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Order.

9.      Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Agreement, as the case may be.

10.      The Debtors and the Purchaser are hereby authorized to fully assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and the Sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Purchased Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Bankruptcy Court.  The Purchaser shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to its obligations to do so have been met, satisfied or waived.

11.     The Debtors, the Purchaser and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver  such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Bankruptcy Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.

12.     The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under

appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Delaware, and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.  Pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant to this Order shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of an order confirming a plan, the appropriate Governmental Authority or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

***Transfer of Assets***

13.     Except as otherwise set forth in this Order, effective as of the consummation of the Sale at Closing, pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Sale of the Purchased Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all rights, titles and interests in and to the Purchased Assets, free and clear of all Liens, Claims, Encumbrances

and Interests of any kind, other than Assumed Liabilities and Permitted Encumbrances.  The assumption of any Assumed Liability by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtors of all liability with respect to any Assumed Liabilities.  Effective upon the consummation of the Sale at Closing, the Purchaser shall acquire the Purchased Owned Real Property free and clear of all Liens, Claims, Encumbrances and Interests of any kind, other than Assumed Liabilities and Permitted Encumbrances, pursuant to section 363(f) of the Bankruptcy Code, and all Liens, Claims, Encumbrances and Interests in favor of any Governmental Authority pursuant to any grant agreement, are expressly extinguished and shall attached to the proceed of sale in accordance with their relative priorities.

14.    Except to the extent specifically provided in the Agreement or this Order, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b), 363(f) and 365 of the Bankruptcy Code, to sell the Purchased Assets to the Purchaser.  Except to the extent specifically provided in the Agreement or this Order, effective upon the consummation of the Sale at Closing, the sale of the Purchased Assets vests the Purchaser with all right, title and interest to the Purchased Assets free and clear of any and all Liens, Claims, Encumbrances and Interests and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise. All such Liens, Claims, Encumbrances and Interests shall attach to the proceeds of the Sale, in the order of their priority, with the same priority, validity, force, and effect as such Liens,

Claims, Encumbrances and Interests had immediately prior to the consummation of such Sale, subject to all claims and defenses the Debtors may possess with respect thereto. All proceeds of the Sale shall be remitted to the Debtors, subject to the terms of the DIP Order and any other applicable order of the Court. The Sale Motion shall be deemed to provide sufficient notice as to the Sale of the Purchased Assets free and clear of Liens, Claims, Encumbrances and Interests in accordance with Local Rule 6004-1. Following the Closing Date and upon the occurrence of the Closing and the consummation of the Sale, no holder of any Liens, Claims, Encumbrances and Interests, other than Assumed Liabilities or Permitted Encumbrances, in the Purchased Assets may interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to such Liens, Claims, Encumbrances and Interests, or any actions that the Debtors may take in their Chapter 11 Cases and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order. All Liens, Claims, Encumbrances and Interests with respect to the Excluded Assets will continue in, under, and against the Excluded Assets with the same priority, validity, force, and effect as such Liens, Claims, Encumbrances and Interests now have.

15.     The sale of the Purchased Assets is not subject to avoidance by any person or for any reason whatsoever, including, without limitation, pursuant to section 363(n) of the Bankruptcy Code and the Purchaser and the Purchaser Parties shall not be subject to damages, including any costs, fees, or expenses under section 363(n) of the Bankruptcy Code.

16.     The provisions of this Order authorizing the Sale of the Purchased Assets free and clear of Liens, Claims, Encumbrances and Interests upon the consummation of the Sale at Closing, other than the Assumed Liabilities and Permitted Exceptions, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases,

termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.  All such Liens, Claims, Encumbrances and Interests are to attach to the proceeds of the Sale, in the order of their priority, with the same priority, validity, force, and effect as such Liens, Claims, Encumbrances and Interests had immediately prior to the consummation of such Sale.

17.     On, before or after the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances and Interests of any kind against the Purchased Assets (other than Assumed Liabilities and Permitted Encumbrances) upon the consummation of the Sale at Closing, as such Liens, Claims, Encumbrances and Interests may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances and Interests in or against the Purchased Assets that are not Assumed Liabilities or Permitted Encumbrances shall not have delivered to the Debtors prior to, at or after the Closing after request therefor, in proper form for filing and  executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances and Interests that the person or entity has with respect to the Purchased Assets, the Debtor or the Purchaser, may, in their sole option and at their sole discretion, execute and file on behalf and in the stead of such creditor any such document as may be necessary to evidence the discharge on any Lien, Claim or Encumbrance in or against the Purchased Assets that are not Assumed Liabilities or Permitted Encumbrances.  Nothing herein is intended to affect or limit the provisions of paragraphs 12, 13, 14 or 16 of this Order.  Each filing office, recording office or other registry where Liens, Claims, Encumbrances and Interests in or against the Purchased Assets are filed or recorded is authorized

and directed to release such Liens, Claims, Encumbrances and Interests in or against the Purchased Assets based upon the filing of a certified copy of this Order.  Contemporaneously with the consummation of the Sale at Closing and application of the proceeds thereof in accordance with the terms of the DIP Order, DIP Agent and Prepetition ABL Administrative Agent shall have filed, or shall have agreed to file contemporaneously with such Sale at Closing and application of proceeds, all relevant termination statements or amendments, as applicable, with respect to its liens on the Purchased Assets.

18.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date and upon the consummation of the Sale at Closing, to operate under any transferred license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date and upon the consummation of the Sale at Closing.

19.     Except as otherwise set forth in this Order, all of the Debtors' interests in the Purchased Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the consummation of the Sale at Closing, transferred to and vested in the Purchaser free and clear of all Liens, Claims, Interests and Encumbrances, other than the Assumed Liabilities, and Permitted Encumbrances.  Upon the occurrence of the consummation of the Sale at Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

20.     Except as otherwise expressly provided in the Agreement or this Order, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.  Any proceeds of accounts receivable owned by the Purchaser following the Closing but received by the Debtors or a different purchaser of assets of the Debtors, shall remain property of the Purchaser, and upon receipt by such party shall be held in trust for the benefit of the Purchaser and remitted to the Purchaser as soon as practicable.  Any proceeds of accounts receivable that are not Purchased Assets but received by Purchaser shall not be property of the Purchaser and shall be held in trust by Purchaser for the benefit of the Debtors or a different purchaser of assets of the Debtors and remitted to such party as soon as practicable.

21.     Subject to the terms, conditions, and provisions of this Order, all Entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (a) with the ability of the Debtors to sell and transfer the Purchased Assets to Purchaser in accordance with the terms of the Agreement and this Order, and (b) with the ability of the Purchaser to acquire, take possession of, use and operate the Purchased Assets in accordance with the terms of the Agreement and this Order.

22.     Except as otherwise provided in the Agreement, and pursuant to section 6.5(e) of the Agreement, effective as of the Closing, the Sellers shall forever release and irrevocably waive all of the Debtors' Waived Avoidance Actions, which are deemed part of the Purchased Assets.

23.     As set forth in Agreement, the Debtors and the Purchaser are exchanging releases of certain claims, which releases are hereby approved.

24.     Upon the consummation of the Sale at Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets to Purchaser and the Debtors' interests in the Purchased Assets acquired by Purchaser pursuant to the terms of the Agreement.

***Assigned Contracts and Assumed Leases***

25.     Pursuant to Section 2.1(b), (c) and (j) of and Schedule 2.1(b), (c) and (j) to the Agreement, the assumption by the Debtors of the Assigned Contracts and the assignment of such contracts to the Purchaser is hereby approved.

26.     The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assigned Contracts to Purchaser free and clear of all Liens and Liabilities, and to execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to Purchaser as provided in the Agreement. Cure Costs shall be paid by the Purchaser subject to the terms of, and in accordance with, the terms of the Agreement and Bidding Procedures Order. The Cure Costs are hereby fixed at the amounts set forth in the Cure Notice or as otherwise determined by the Court and as set forth in Schedule 1 attached hereto and by this reference incorporated herein. Payment of the Cure Costs shall be in full satisfaction and cure of any and all defaults required to be cured with respect to the Assigned Contracts under section 365(b)(1) of the Bankruptcy Code. Subject to paragraphs 25 through 31 herein, Purchaser has also provided adequate assurance of future performance under the Assigned Contracts in satisfaction of section 365 of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Non-Debtor Counterparties to such Assigned Contracts. In accordance with the Assumption and Assignment Procedures and the terms of this Order and subject to paragraphs 25 through 31 herein, following

the Closing, Purchaser shall be fully and irrevocably vested with all of the Debtors' right, title and interest in and under the Assigned Contracts in connection with the Purchased Assets, free and clear of any Liens, Claims, Encumbrances and Interests, and each Assigned Contract shall be fully enforceable by the Purchaser in accordance with its respective terms and conditions, except as limited by this Order. In accordance with the Assumption and Assignment Procedures and subject to paragraphs 25 through 31, following assignment of the Assigned Contracts to Purchaser, the Debtors shall be relieved from any further liability with respect to such Assigned Contracts. Purchaser acknowledges and agrees that from and after the Closing, or any later applicable effective date of assumption with respect to a particular Assigned Contract, subject to and in accordance with the Agreement, it shall comply with the terms of each Assigned Contract in its entirety, unless any such provisions are not enforceable pursuant to the terms of this Order. The assumption by the Debtors and assignment to Purchaser of any Assigned Contract shall not be a default under such Assigned Contract. To the extent provided in the Agreement, the Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

27.    The Debtors served all Non-Debtor Counterparties to the Assigned Contracts with the Potential Assumption and Assignment Notice and the Confirmation Notice (as defined in the Potential Assumption and Assignment Notice), and the deadline to object to the Cure Costs and adequate assurance of future performance with respect to the Purchaser has passed. Accordingly, unless an objection to the proposed assumption and assignment of an Assigned Contract (including whether applicable law excuses a Non-Debtor Counterparty from accepting performance by, or rendering performance to, Purchaser), the proposed Cure Costs or the adequate assurance of future performance information with respect to Purchaser was filed and

served before the applicable deadline, each Non-Debtor Counterparty to an Assigned Contract is forever barred, estopped and permanently enjoined from asserting against the Debtors or Purchaser, their respective affiliates, successors or assigns or the property of any of them, any objection to assignment or default existing as of the date of the Cure Costs/Assignment Objection Deadline or Post-Auction Objection Deadline (each as defined in the Assumption and Assignment Procedures) if such objection or default was not raised or asserted prior to or at the appropriate Cure Costs/Assignment Objection Deadline or Post-Auction Objection Deadline.

28.     All of the requirements of sections 365 of the Bankruptcy Code, including without limitation, the demonstration of adequate assurance of future performance, have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to Purchaser, solely with respect to the Assigned Contracts that are not subject to an unresolved Cure Cost/Assignment Objection or Post-Auction Objection. Purchaser has satisfied its adequate assurance of future performance requirements with respect to the Assigned Contracts that are not subject to an unresolved Cure Cost/Assignment Objection or Post-Auction Objection, and has demonstrated it is sufficiently capitalized or otherwise able to comply with the necessary obligations under those Assigned Contracts.

29.     To the extent a Non-Debtor Counterparty to an Assigned Contract failed to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined as set forth on the relevant Potential Assumption and Assignment Notice as to each Non-Debtor Counterparty and any such Non-Debtor Counterparty shall be barred, and forever prohibited from challenging, objecting to or denying the validity and finality of the Cure Cost as of such date.

30.     Upon the Debtors' assumption and assignment of the Assigned Contracts to the Purchaser under the provisions of this Order and any additional orders of the Court and the payment of any Cure Cost in accordance with the Agreement or any applicable order, no default or other obligations arising prior to the Closing Date shall exist under any Assigned Contract, and each Non-Debtor Counterparty is forever barred and estopped from (a) declaring a default by the Debtors or the Purchaser under such Assigned Contract, (b) raising or asserting against the Debtors or the Purchaser (or its designee(s)), or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, or (c) taking any other action against the Purchaser or its designee(s) as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract, in each case in connection with the Sale. Each Non-Debtor Counterparty is also forever barred and estopped from raising or asserting against the Purchaser or its designee(s)any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the closing of the Sale.

31.     With respect to objections to any Cure Cost/Assignment Objections and Post-Auction Objections relating to the Assigned Contracts that remain unresolved as of the Sale Hearing, such objections shall be resolved in accordance with the procedures approved in the Assumption and Assignment Procedures. Consideration of unresolved Cure Cost/Assignment Objections relating to assignment of Assigned Contracts and Post-Auction Objections relating to the Assigned Contracts, unless otherwise ordered by the Court or with the consent of the Non-Debtor Counterparty to any Assigned Contract that is subject to a Cure Costs/Assignment Objection relating to such assignment or Post-Auction Objections relating to the Assigned

Contract, shall be adjourned to a date to be determined; provided, however, that (a) any Assigned Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection, and (b) such undisputed Cure Cost shall be promptly cured on or after the Closing Date or as otherwise agreed to by the Debtors, Purchaser and the applicable Non-Debtor Counterparty by payment of the applicable Cure Cost in accordance with the terms of the Agreement.

32.     With respect to the Assigned Contracts, in connection with the Sale: (a) the Debtors may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtors may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that directly or indirectly prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of each Assigned Contract have been satisfied; and (d) effective upon the Closing Date, or any later applicable effective date of assumption with respect to a particular Assigned Contract, the Assigned Contracts shall be transferred and assigned to, and from and following the Closing, or such later applicable effective date, and the Assigned Contracts shall remain in full force and effect for the benefit of the Purchaser, notwithstanding any provision in any Assigned Contract (including those of the type described in sections 365(b)(2) and (e) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code,

31933574.1

LEGAL02/44699916v2

the Purchaser shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contract and the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption by the Debtors and assignment to the Purchaser, except as otherwise provided in the Agreement. To the extent any provision in any Assigned Contract assumed and assigned pursuant to this Order (i) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption and assignment (including, without limitation, any "change of control" provision), or (ii) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (A) the commencement of the Debtors' Chapter 11 Cases, (B) the insolvency or financial condition of any of the Debtors at any time before the closing of the Debtors' Chapter 11 Cases, (C) the Debtors' assumption and assignment of such Assigned Contract, (D) a change of control or similar occurrence, or (E) the consummation of the Sale, then such provision shall be deemed modified in connection with the Sale so as not to entitle the Non-Debtor Counterparty to prohibit, restrict, or condition such assumption and assignment, to modify, terminate, or declare a breach or default under such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including without limitation, any such provision that purports to allow the Non-Debtor Counterparty to terminate or recapture such Assigned Contract, impose any penalty, additional payments, damages, or other financial accommodations in favor of the Non-Debtor Counterparty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith. All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect in connection with the Sale pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

33.     Except as otherwise specifically provided for by order of the Court, all defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing Date or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts (in each case, without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be promptly cured pursuant to the terms of the Agreement and this Order on or after the Closing Date or as otherwise agreed to by the Debtors, Purchaser and the applicable Counterparty by the payment of the applicable Cure Cost by the Debtors, in accordance with the Agreement. The Purchaser shall have no liability arising or accruing under the Assigned Contracts on or prior to the Closing, except as otherwise expressly provided in the Agreement or this Order.

***Additional Provisions***

34.     Effective upon the Closing, each Debtor, on behalf of itself and its estate, shall acknowledge that it has no known claim, counterclaim, setoff, recoupment, action or cause of action of any kind or nature whatsoever against the Purchaser (collectively, the "Released Claims").  Should any Released Claims nonetheless exist, each Debtor, on behalf of itself and its estate, hereby (i) releases and discharges the Purchaser from any claim, cause of action, liability or obligation whatsoever with respect to the Released Claims and (ii) releases, waives and discharges all of the Released Claims against the Purchaser, provided however, that the foregoing release shall not apply to any claim or cause of action of any kind or nature (a) arising under or relating to the Agreement; or (b) for indemnification or contribution related to any third-party claim.

35. The Debtors who are Sellers under the Agreement of their trademarked corporate names are hereby authorized and empowered, upon and in connection with the Closing, to change their corporate names and the caption of these Chapter 11 Cases, consistent with applicable law. The Debtors shall file a notice of change of case caption, containing the new caption and the proposed new corporate names of the applicable Debtors, within ten (10) business days of the Closing, and the change of case caption for these Chapter 11 Cases shall be deemed effective as of the Closing.

36. Each and every Governmental Authority is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

37. To the extent permitted by section 525 of the Bankruptcy Code, no Governmental Authority may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transaction contemplated by the Agreement.

38. The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' obligations or liabilities other than the Assumed Liabilities as set forth in the Agreement or this Order, and the Purchaser has not purchased any of the Excluded Assets. Consequently, all persons, Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Liens, Claims, Encumbrances and Interests on such Purchased Assets based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Purchased Assets, including asserting any setoff, right of subrogation of any kind, to recover any Liens, Claims, Encumbrances and Interests or on account of any liabilities of the Debtors other than Assumed

Liabilities pursuant to the Agreement.  Except as otherwise set forth in this Order, all persons holding or asserting any Interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens, Claims, Encumbrances and Interests or cause of action against the Purchaser or the Purchased Assets for any liability associated with the Excluded Assets.

39.    The Purchaser is not a "successor" or alter-ego to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Agreement, and the Sale Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1.  Except to the extent the Purchaser assumes the Assumed Liabilities pursuant to the Agreement, neither the purchase of the Purchased Assets by the Purchaser or its affiliates, nor the fact that the Purchaser or its affiliates are using any of the Purchased Assets previously operated by the Debtors, will cause the Purchaser or any of its affiliates to be deemed a successor or alter-ego in any respect to the Debtors' business within the meaning of, or in connection with, (i) any foreign, federal, state or local revenue, pension, ERISA, including, but not limited to any withdrawal liability, tax, labor, employment, antitrust, environmental laws, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), (ii) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (iii) except as expressly set forth in the Agreement any employment or labor agreements, collective bargaining agreements, including the

Collective Bargaining Agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (iv) any pension, health, welfare, compensation or other employee or retiree benefit plans, agreements, practices and programs, including, without limitation, Sellers' Plans and any pension plan of the Debtors, (v) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements, collective bargaining agreements, or pension, health, welfare, compensation or other employee or retiree benefit plans, agreements, practices and programs, and any obligations that might otherwise arise from any such cessation, dismissal or termination pursuant to any law of the United States, any State therein, or any other jurisdiction in the world, whether such obligations arise under any contract, agreement, statute, regulation, ordinance, common law, public policy, constitution or any other source, including without limitation, the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or WARN, (vi) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.*, (vii) any liabilities, debts or obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Purchased Assets prior to Closing, and

31933574.1

LEGAL02/44699916v2

(ix) any litigation.  The Purchaser shall have no successor, alter-ego or vicarious liabilities of any kind or character.

40.    Except with respect to Assumed Liabilities and Permitted Encumbrances, all persons and entities, including, but not limited to, all debt security holders, equity security holders, Governmental Authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' Business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting, against the Purchaser, any of its affiliates, its successors or assigns, their property or the Purchased Assets, such persons' or entities' Liens, Claims, Encumbrances or Interest, other than Assumed Liabilities and Permitted Encumbrances, in and to the Purchased Assets, including, without limitation, the following actions:  (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, any of its affiliates, successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, any of its affiliates, successors, assets or properties; (iii) creating, perfecting or enforcing any Lien or other Claim against the Purchaser, any of its affiliates, successors, assets or properties; (iv) asserting any setoff or right of subrogation of any kind against any obligation due Purchaser, any of its affiliates or successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court,

or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the business operated with the Purchased Assets.

41.     Subject to the terms of the Agreement and the terms of this Order, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Bankruptcy Court; provided, however, any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.

42.     The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtors and the Purchaser that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

43.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and transactions contemplated by the Agreement.

44.     Pursuant to the terms of and subject to the conditions contained in the Agreement, following the Closing, the Debtors, their successors and assigns and any trustee in bankruptcy will have access to the Debtors' books and records subject to the terms of, and for the specified purposes set forth in, and in accordance with, Sections 7.1(c) and 7.7 of the Agreement.

45.     To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

46.     Notwithstanding that the Debtors' cases are not substantively consolidated, this Order shall have the same effect and binding nature in each of the Debtors' cases as if entered in each case as a separate order.

47.     This Order and the Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in applicable chapter 7 cases if these cases are converted from chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.

48.     The provisions of this Order are non-severable and mutually dependent.

49.     Nothing in any order of this Bankruptcy Court or contained in any plan of reorganization or liquidation confirmed in the Chapter 11 Cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

50.     Notwithstanding Bankruptcy Rules 6003, 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement. In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement, the Purchaser shall be deemed to be

acting in "good faith" and shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

51.     The Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

52.     Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

53.     After giving due consideration to the facts, circumstances, and conditions of the Agreement, the Sale is consistent with the Debtors' privacy policies concerning personally identifiable information and no showing was made that the sale of any personally identifiable information contemplated in the Agreement, subject to the terms of this Order, would violate applicable non-bankruptcy law.

54.     From time to time, as and when requested by any party, each party to the Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the Agreement.

55.     This Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order and the Agreement, or the rights and duties of the

parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assigned Contracts, disputes with any third parties related to the Purchased Assets and any Assigned Contracts, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims, Encumbrances and Interests, and the attachment of such Liens, Claims, Encumbrances and Interests to the proceeds of the Sale, if any. This Bankruptcy Court shall specifically retain jurisdiction to hear and determine all disputes between the Purchaser and the Debtors or any other Entity concerning the ownership, entitlement and/or turnover of any proceeds of accounts receivable owned by the Purchaser or its designee(s) which arose out of or in connection with the Purchased Assets.


Dated:  August __, 2024
        Wilmington, Delaware

                                        _____
                                        MARY F. WALRATH
JUDGE                                     UNITED    STATES    BANKRUPTCY

## SCHEDULE 1

| Debtor | Contract Counterparty | Description of Contract | Cure Amount |
|---|---|---|---|
| Powder River Transportation Services, Inc. | North Platte Agency LLC | Lease - 500 Willow Dr, Douglas, WY 82633 | $311.67* |
| Powder River Transportation Services, Inc. | Livingston Landlady | Lease - 210 Loves Lane Livingston MT 59047 | $733.33* |
| Powder River Transportation Services, Inc. | Livingston Landlady | Lease - 705 N N St., Livingston MT 59047 | $522.50* |
| Powder River Transportation Services, Inc. | HRT Rentals | Lease - 175 Main Boulder Road Fishing Hole 'B' | $421.67* |
| Powder River Transportation Services, Inc. | Kristy M Lewis | Lease - PO Box 904, Newcastle WY 82701 | $82.50* |
| Powder River Transportation Services, Inc. | Lone Tree Village 108 | Lease - 401 South Russel Ave #108 Gillette WY 82633 | $344.67* |
| Powder River Transportation Services, Inc. | Lone Tree Village 24 | Lease - 401 South Russel Ave # 24 Gillette WY 82633 | Included in Amount Above* |
| Powder River Transportation Services, Inc. | 4w Properties | Lease - 120 Meadowlark Street, Glenrock WY 82637 | $3,903.33 |
| Powder River Transportation Services, Inc. | Schon LLC | Lease - 7568 Hwy 59, Wright WY 82718 | $6,000 |
| Powder River Transportation Services, Inc. | St Mary's Catholic Church | Lease - 41 View Vista Dr, Livingston MT 59047 | $0 |
| Powder River Transportation Services, Inc. | HDDA- Billings, LLC | Lease - 5500 Midland Rd, Billings MT 59102 | $0 |
| Powder River Transportation Services, Inc. | Columbus 1 Re2 LLC | Lease - 602 8th Ave. North, Columbus MT 59109 | $0 |
| Powder River Transportation Services, Inc. | Montana Works | Lease - Laurel MT | $0 |
| Powder River Transportation Services, Inc. | Gasstop Two | Lease - Union Chapel Road | $3,493.33 |
| Powder River Transportation Services, Inc. | Cook Properties | Lease - 6830 Commercial Ave, Billings MT 59102 | $0 |
| Powder River Transportation Services, Inc. | Park County Fair | Lease - 46 View Vista Dr, Livingston MT 59047 | $0 |
| Powder River Transportation Services, Inc. | Beartooth Industries | Lease - 7042 Highway 212, Red Lodge MT 59068 | $0 |
| Powder River Transportation Services, Inc. | Susan Carter | Lease - 542 Broadway, Red Lodge, MT 59068 | $0 |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 1700 East Hwy. 14-16, Gillette, WY - Building | $32,845.12** |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 1700 East Hwy. 14-16, Gillette, WY -Parking lot "A" | $4,398** |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 1700 East Hwy. 14-16, Gillette, WY -Parking lot "B" | $1,600** |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 400 Stetson Drive (Arch Coal Parking lot) | $2,050** |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 1611 E 6th Street (Arch & Cloud Peak parking lot) | $1,575** |

* Cure Costs associated with these designated leases shall not be counted towards the Cure Costs Cap of $46,200.00 and shall be borne by the Purchaser.
** Cure Costs subject to resolution of pending informal objection.

| Debtor | Contract Counterparty | Description of Contract | Cure Amount |
|---|---|---|---|
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 685 Smylie Road, Douglas, WY(Building) | $10,328.96** |
| Powder River Transportation Services, Inc. | Coach Properties | Lease - 685 Smylie Road, Douglas, WY(Parking Lot) | $1,393.17** |
| Powder River Transportation Services, Inc. | Montana Public Safety | Lease - #14 Midway Dr, Red Lodge MT 59608 | $0 |
| ~~Butler Motor Transit, Inc.~~ | ~~Butler Body Shop~~ | ~~Lease - 210 S. Monroe St. Butler, PA 16001~~ | ~~$20,303.22~~ |
| Powder River Transportation Services, Inc. | Peabody Powder River Services, LLC | Charter Bus Transportation Services Agreement, dated as of August 20, 2019, as amended by that certain First Amendment, dated as of July 29, 2022 | $0 |
| Powder River Transportation Services, Inc. | Peabody Powder River Services, LLC | Charter Bus Transportation Services Agreement, dated as of September 30, 2015, as amended by that certain First Amendment, dated as of January 20, 2017, and that certain Second Amendment, dated as of March 1, 2021 | $0 |
| Powder River Transportation Services, Inc. | Stillwater Mining Company d/b/a Sibanya-Stillwater | Contract #4036 (OS), executed as of March 14, 2023 | $0 |
| Powder River Transportation Services, Inc. | Navajo Transitional Energy Company, LLC | Agreement for the Supply of Products and/or Services (Contract No. P20193001201), Statement of Work 01, effective as of February 1, 2020, and Statement of Work 02, effective as of April 1, 2022, as amended by Amendment Number 01, dated as of February 24, 2022 (Antelope Mine Contract) | $0 |
| Transportation Management Services, Inc. DBA Lenzner Coach Line. | Whiting-Turner PJ Dick JV | Whiting-Turner PJ Dick JV subcontract, dated as of July 25th, 2023 | |
| Powder River Transportation Services, Inc. | Wyoming Machinery Company | Transportation Agreement, dated as of June 7, 2019 | $0 |
| Coach USA, Inc. | Bridgestone Americas Tire Operations, LLC | Agreement, dated as of August 19, 2019, Solely with respect to tires currently on the Purchased Vehicles listed on APA Schedule 2.1(q) | $0 |

| Debtor | Contract Counterparty | Description of Contract | Cure Amount |
|---|---|---|---|
| Butler Motor Transit, Inc | AFL-CIO and Local 298 (formerly 1931) of the Eastern States Joint Board | Memorandum of Agreement for the period 5/1/2022 – 4/30/2025 in relation to mechanics (unsigned)[4][***] | $0 |

---

[***] Terms are being accepted subject to necessary changes needed to provide substantially equivalent benefits and policies to Purchaser's benefit plans and policies.

LEGAL02/44699916v2

## EXHIBIT C

**Revised First Amendment**

# FIRST AMENDMENT
## TO
## ASSET PURCHASE AGREEMENT

This **FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT** (this "***First Amendment***") is made as of August __, 2024 (the "***First Amendment Date***"), by and among the entities set forth on the signature page hereto under the heading "Sellers" (collectively, the "***Sellers***" and individually each a "***Seller***"), and Great Plains Crew Change Company, LLC, a Delaware limited liability company or its designee(s) (the "***Purchaser***"). Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in Section 1.1 of the Asset Purchase Agreement (as defined below).

**WHEREAS**, on July 8, 2024, Sellers and Purchaser entered into that certain Asset Purchase Agreement (the "***Asset Purchase Agreement***");

**WHEREAS**, Sellers and Purchaser desire to amend the Asset Purchase Agreement to, among other things, replace certain of the Schedules thereto.

**NOW, THEREFORE**, in consideration of the premises and the mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Amendments**.

    (a)     Schedules 2.1(c) and 2.1(d) shall be deleted in their entirety and replaced with those attached hereto as Exhibit A.

    (b)     Notwithstanding anything contrary in the Asset Purchase Agreement, the aggregate Cure Costs of $2,416.34 relating to the designated leases on Schedule 2.1(c), as amended, shall not be counted towards the Cure Costs Cap of $46,200.00 and shall be borne by Purchaser.

2. **Scope of Amendment**. From and after the First Amendment Date, all references to the Asset Purchase Agreement shall refer to the Asset Purchase Agreement as amended by this First Amendment. Except as affected by this First Amendment, the Asset Purchase Agreement is unchanged and continues in full force and effect.

3. **Miscellaneous**. The Section headings are furnished for the convenience of the Parties and are not to be considered in the construction or interpretation of this First Amendment or the Asset Purchase Agreement. This First Amendment may be executed in any number of counterparts, each of which shall be deemed an original, but which together shall constitute one and the same instrument. This First Amendment shall be a contract made under and governed by the laws of the State of Delaware applicable to contracts made and to be performed entirely within such state.

*[Signature Pages Follow]*

**IN WITNESS WHEREOF,** the Parties hereto have caused this First Amendment to the Asset Purchase Agreement to be executed the day and year first above written.

**PURCHASER:**

**Great Plains Crew Change Company, LLC**

By:_____

Name: John Montgomery
Title:   Chief Executive Officer

*[Signatures Continue on Following Pages]*

**SELLERS:**

**POWDER RIVER TRANSPORTATION SERVICES, INC.**

By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**BUTLER MOTOR TRANSIT, INC.**

By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**GAD-ABOUT TOURS, INC.**

By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**TRANSPORTATION MANAGEMENT SERVICES, INC.**

By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**ELKO, INC.**

By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

*[Signatures Continue on Following Pages]*

**SELLERS (CONT.):**

**COACH LEASING, INC.**


By: _____

Name: Ross Kinnear
Title: Chief Financial Officer

**CAM LEASING, LLC**


By: _____

Name: Ross Kinnear
Title: Chief Financial Officer

**COACH USA, INC.**


By: _____

Name: Ross Kinnear
Title: Chief Financial Officer

**COACH USA ADMINISTRATION, INC.**


By: _____

Name: Ross Kinnear
Title: Chief Financial Officer

## EXHIBIT A

*[see attached]*

**SCHEDULE 2.1(c): ASSUMED AND REJECTED REAL PROPERTY LEASES**

| Vendor | Commence | Address | Amount | Use | End | Assumed/ Rejected * |
|---|---|---|---|---|---|---|
| North Platte Agency LLC | Dec-21 | 500 Willow Dr, Douglas, WY 82633 | $    850.00 | Apartment | Monthly | Assumed** |
| Livingston Landlady | Aug-23 | 210 Loves Lane Livingston MT 59047 | $  2,000.00 | Apartment | Monthly | Assumed** |
| Livingston Landlady | Apr-22 | 705 N N St., Livingston MT 59047 | $  1,425.00 | Apartment | Monthly | Assumed** |
| HRT Rentals | Jan-24 | 175 Main Boulder Road Fishing Hole 'B' | $  1,150.00 | Apartment | Monthly | Assumed** |
| Kristy M Lewis | Sep-19 | PO Box 904, Newcastle WY  82701 | $    225.00 | Storage | Monthly | Assumed** |
| Lone Tree Village 108 | Aug-23 | 401 South Russel Ave #108 Gillette WY 82633 | $    940.00 | Trailer | Monthly | Assumed** |
| Lone Tree Village 24 | | 401 South Russel Ave # 24 Gillette WY 82633 | $    940.00 | Trailer | Monthly | Assumed** |
| 4w Properties | Jun-15 | 120 Meadowlark Street, Glenrock WY 82637 | $    800.00 | Parking | Monthly | Assumed |
| Schon LLC | Apr-22 | 7568 Hwy 59, Wright WY 82718 | $  1,200.00 | Parking | Monthly | Assumed |
| St Mary's Catholic Church | Sep-19 | 41 View Vista Dr, Livingston MT  59047 | $  1,500.00 | Parking | Monthly | Assumed |
| HDDA- Billings, LLC | May-22 | 5500 Midland Rd, Billings MT 59102 | $  1,000.00 | Parking | Monthly | Assumed |
| Columbus 1 Re2 LLC | May-04 | 602 8th Ave. North, Columbus MT 59109 | $  2,600.00 | Parking | Monthly | Assumed |
| Montana Works | May-22 | Laurel MT | $  2,000.00 | Parking | Monthly | Assumed |
| Gasstop Two | Aug-03 | Union Chapel Road | $  1,680.00 | Parking | Monthly | Assumed |
| Cook Properties | Jan-13 | 6830 Commercial Ave, Billings MT 59102 | $  8,678.59 | Building | Monthly | Assumed |
| Park County Fair | Jul-06 | 46 View Vista Dr, Livingston MT 59047 | $    300.00 | Parking | Monthly | Assumed |
| Beartooth Industries | Dec-04 | 7042 Highway 212, Red Lodge MT 59068 | $    375.00 | Parking | Monthly | Assumed |
| Susan Carter | May-04 | 542 Broadway, Red Lodge, MT 59068 | $    600.00 | Parking | Monthly | Assumed |
| Coach Properties | Jan-97 | 1700 East Hwy. 14-16, Gillette, WY - Building | $ 16,422.56 | Building | Monthly | Assumed |
| Coach Properties-1 | Aug-01 | 1700 East Hwy. 14-16, Gillette, WY -Parking lot "A" | $  2,199.00 | Parking | Monthly | Assumed |
| Coach Properties-2 | Jul-04 | 1700 East Hwy. 14-16, Gillette, WY -Parking lot "B" | $    800.00 | Building | Monthly | Assumed |
| Coach Properties-3 | Aug-01 | 400 Stetson Drive (Arch Coal Parking lot) | $  1,025.00 | Parking | Monthly | Assumed |
| Coach Properties-4 | Aug-01 | 1611 E 6th Street (Arch & Cloud Peak parking lot) | $  1,575.00 | Parking | Monthly | Assumed |
| Coach Properties-5 | | 685 Smylie Road, Douglas, WY(Building) | $  5,164.48 | Building | Monthly | Assumed |
| Coach Properties-6 | Jul-04 | 685 Smylie Road, Douglas, WY(Parking Lot) | $  1,393.17 | Parking | Monthly | Assumed |
| Montana Public Safety | 1-Jul | #14 Midway Dr, Red Lodge MT 59608 | $  2,550.00 | Tower | Annual | Assumed |

\*    Leases designed as "Rejected" shall be deemed to be "Leases Being Rejected" pursuant to the Asset Purchase Agreement, and Leases designated as "Assumed" shall be deemed to be "Leases Being Assumed" pursuant to the Asset Purchase Agreement. At any point prior to the Closing, Purchaser may change the designation of any lease from "Assumed" to "Rejected" or from "Rejected" to "Assumed".

\*\*    Cure Costs associated with designated Leases shall not be counted towards the Cure Costs Cap of $46,200.00 and shall be borne by Purchaser.

## SCHEDULE 2.1(d): PERMITS

1.  All permits relating solely (a) to the properties covered under Leases being "Assumed" on Schedule 2.1(c) as of the Closing Date, (b) the Powder River Transportation operations, (c) the Butler Motor Transit operations in Butler, PA (specifically including the PA DOT operating authority), and/or (d) the Purchased Assets.

**<u>EXHIBIT D</u>**

**Blackline**

**FIRST AMENDMENT**
**TO**
**ASSET PURCHASE AGREEMENT**

This **FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT** (this "***First Amendment***") is made as of August __, 2024 (the "***First Amendment Date***"), by and among the entities set forth on the signature page hereto under the heading "Sellers" (collectively, the "***Sellers***" and individually each a "***Seller***"), and Great Plains Crew Change Company, LLC, a Delaware limited liability company or its designee(s) (the "***Purchaser***").  Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in Section ~~1.1~~1.1 of the Asset Purchase Agreement (as defined below).

**WHEREAS**, on July 8, 2024, Sellers and Purchaser entered into that certain Asset Purchase Agreement (the "***Asset Purchase Agreement***");

**WHEREAS**, Sellers and Purchaser desire to amend the Asset Purchase Agreement to, among other things, replace certain of the Schedules thereto.

**NOW, THEREFORE**, in consideration of the premises and the mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      **Amendments**.

    (a)      Schedules 2.1(c) and 2.1(d) shall be deleted in their entirety and replaced with those attached hereto as Exhibit A.

    (b)      Notwithstanding anything contrary in the Asset Purchase Agreement, the aggregate Cure Costs of $2,416.34 relating to the designated leases on Schedule 2.1(c), as amended, shall not be counted towards the Cure Costs Cap of $46,200.00 and shall be borne by Purchaser.

2.      **Scope of Amendment**.  From and after the First Amendment Date, all references to the Asset Purchase Agreement shall refer to the Asset Purchase Agreement as amended by this First Amendment.  Except as affected by this First Amendment, the Asset Purchase Agreement is unchanged and continues in full force and effect.

*3.*      **Miscellaneous**.  The Section headings are furnished for the convenience of the Parties and are not to be considered in the construction or interpretation of this First Amendment or the Asset Purchase Agreement.  This First Amendment may be executed in any number of counterparts, each of which shall be deemed an original, but which together shall constitute one and the same instrument. This First Amendment shall be a contract made under and governed by the laws of the State of Delaware applicable to contracts made and to be performed entirely within such state.

*[Signature Pages Follow]*

**IN WITNESS WHEREOF,** the Parties hereto have caused this First Amendment to the Asset Purchase Agreement to be executed the day and year first above written.

**PURCHASER:**

**Great Plains Crew Change Company, LLC**

By:_____

Name: John Montgomery
Title:   Chief Executive Officer

*[Signatures Continue on Following Pages]*

**SELLERS:**

**POWDER RIVER TRANSPORTATION SERVICES, INC.**

By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**BUTLER MOTOR TRANSIT, INC.**

By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**GAD-ABOUT TOURS, INC.**

By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**TRANSPORTATION MANAGEMENT SERVICES, INC.**

By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**ELKO, INC.**

By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

*[Signatures Continue on Following Pages]*

**SELLERS (CONT.):**

**COACH LEASING, INC.**


By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**CAM LEASING, LLC**


By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**COACH USA, INC.**


By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**COACH USA ADMINISTRATION, INC.**


By:_____

Name: Ross Kinnear
Title: Chief Financial Officer

**<u>EXHIBIT A</u>**

*[see attached]*

**SCHEDULE 2.1(c): ASSUMED AND REJECTED REAL PROPERTY LEASES**

| Vendor | Commence | Address | Amount | Use | End | Assumed/ Rejected * |
|---|---|---|---|---|---|---|
| North Platte Agency LLC | Dec-21 | 500 Willow Dr, Douglas, WY 82633 | $ 850.00 | Apartment | Monthly | Assumed** |
| Livingston Landlady | Aug-23 | 210 Loves Lane Livingston MT 59047 | $ 2,000.00 | Apartment | Monthly | Assumed** |
| Livingston Landlady | Apr-22 | 705 N N St., Livingston MT 59047 | $ 1,425.00 | Apartment | Monthly | Assumed** |
| HRT Rentals | Jan-24 | 175 Main Boulder Road Fishing Hole 'B' | $ 1,150.00 | Apartment | Monthly | Assumed** |
| Kristy M Lewis | Sep-19 | PO Box 904, Newcastle WY  82701 | $ 225.00 | Storage | Monthly | Assumed** |
| Lone Tree Village 108 | Aug-23 | 401 South Russel Ave #108 Gillette WY 82633 | $ 940.00 | Trailer | Monthly | Assumed** |
| Lone Tree Village 24 | | 401 South Russel Ave # 24 Gillette WY 82633 | $ 940.00 | Trailer | Monthly | Assumed** |
| 4w Properties | Jun-15 | 120 Meadowlark Street, Glenrock WY 82637 | $ 800.00 | Parking | Monthly | Assumed |
| Schon LLC | Apr-22 | 7568 Hwy 59, Wright WY 82718 | $ 1,200.00 | Parking | Monthly | Assumed |
| St Mary's Catholic Church | Sep-19 | 41 View Vista Dr, Livingston MT  59047 | $ 1,500.00 | Parking | Monthly | Assumed |
| HDDA- Billings, LLC | May-22 | 5500 Midland Rd, Billings MT 59102 | $ 1,000.00 | Parking | Monthly | Assumed |
| Columbus 1 Re2 LLC | May-04 | 602 8th Ave. North, Columbus MT 59109 | $ 2,600.00 | Parking | Monthly | Assumed |
| Montana Works | May-22 | Laurel MT | $ 2,000.00 | Parking | Monthly | Assumed |
| Gasstop Two | Aug-03 | Union Chapel Road | $ 1,680.00 | Parking | Monthly | Assumed |
| Cook Properties | Jan-13 | 6830 Commercial Ave, Billings MT 59102 | $ 8,678.59 | Building | Monthly | Assumed |
| Park County Fair | Jul-06 | 46 View Vista Dr, Livingston MT 59047 | $ 300.00 | Parking | Monthly | Assumed |
| Beartooth Industries | Dec-04 | 7042 Highway 212, Red Lodge MT 59068 | $ 375.00 | Parking | Monthly | Assumed |
| Susan Carter | May-04 | 542 Broadway, Red Lodge, MT 59068 | $ 600.00 | Parking | Monthly | Assumed |
| Coach Properties | Jan-97 | 1700 East Hwy. 14-16, Gillette, WY - Building | $ 16,422.56 | Building | Monthly | Assumed |
| Coach Properties-1 | Aug-01 | 1700 East Hwy. 14-16, Gillette, WY -Parking lot "A" | $ 2,199.00 | Parking | Monthly | Assumed |
| Coach Properties-2 | Jul-04 | 1700 East Hwy. 14-16, Gillette, WY -Parking lot "B" | $ 800.00 | Building | Monthly | Assumed |
| Coach Properties-3 | Aug-01 | 400 Stetson Drive (Arch Coal Parking lot) | $ 1,025.00 | Parking | Monthly | Assumed |
| Coach Properties-4 | Aug-01 | 1611 E 6th Street (Arch & Cloud Peak parking lot) | $ 1,575.00 | Parking | Monthly | Assumed |
| Coach Properties-5 | | 685 Smylie Road, Douglas, WY(Building) | $ 5,164.48 | Building | Monthly | Assumed |
| Coach Properties-6 | Jul-04 | 685 Smylie Road, Douglas, WY(Parking Lot) | $ 1,393.17 | Parking | Monthly | Assumed |
| Montana Public Safety | 1-Jul | #14 Midway Dr, Red Lodge MT 59608 | $ 2,550.00 | Tower | Annual | Assumed |
| Butler Body Shop | Jan-98 | 210 S. Monroe St. Butler, PA 16001 | $ 6,767.73 | Body Shop | Monthly | Assumed |

\*      Leases designed as "Rejected" shall be deemed to be "Leases Being Rejected" pursuant to the Asset Purchase Agreement, and Leases designated as "Assumed" shall be deemed to be "Leases Being Assumed" pursuant to the Asset Purchase Agreement. At any point prior to the Closing, Purchaser may change the designation of any lease from "Assumed" to "Rejected" or from "Rejected" to "Assumed".

\*\*   Cure Costs associated with designated Leases shall not be counted towards the Cure Costs Cap of $46,200.00 and shall be borne by

Purchaser.

**SCHEDULE 2.1(d): PERMITS**

1.    All permits relating solely (a) to the properties covered under Leases being "Assumed" on Schedule 2.1(c) as of the Closing Date, (b) the Powder River Transportation operations, (c) the Butler Motor Transit operations in Butler, PA (specifically including the PA DOT operating authority), and/or (d) the Purchased Assets.