**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>COACH USA, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11258 (MFW)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>September 25, 2024 at 10:30 a.m. (ET)<br><br>**Objection Deadline:**<br>September 17, 2024 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER CLARIFYING
AND ENFORCING THE SCOPE OF THE AUTOMATIC STAY**

Coach USA, Inc. ("Coach USA") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move the Court (this "Motion") for entry of an order (the "Proposed Order"), substantially in the form annexed hereto as Exhibit A, clarifying and enforcing the scope of the Automatic Stay (as defined below) to preclude (a) any act to enforce the Progressive Award (as defined below) in that certain action styled *Progressive Spine & Orthopaedics a/s/o Nelly Diestra v. Greenwich Insurance Company, Forthright* [Docket No. BER-L-4224-24] (the "New Jersey Action") filed in the Superior Court of New Jersey, Bergen County (the "New Jersey State Court"), and (b) the continued prosecution of Romero and Manriquez (each as defined below) in that certain action styled *Jose Zabaleta v. Pacific Coast Sightseeing Tours & Charters, Inc., et al.* [Case No. F086843] (the "California Action," and together with the New Jersey Action, the "Actions") filed in the Court of Appeal of

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/CoachUSA. The Debtors' mailing address is 160 S Route 17 North, Paramus, NJ 07652.

31966747.2

the State of California, Fifth Appellate District (the "California Appellate Court").  In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief requested herein are sections 105, 362, and 541 of title 11 of the United States Code (the "Bankruptcy Code").

## PRELIMINARY STATEMENT[2]

3.  Prior to the Petition Date, the Debtors were one of the leading providers of ground passenger transportation and mobility solutions in North America.  With twenty-five (25) business segments throughout the United States and Canada employing approximately 2,700 employees and operating approximately 2,070 buses, the Debtors' network of companies carried millions of passengers throughout the United States and Canada each year.  In the ordinary

---

[2]  Capitalized terms used in this section shall have the meanings ascribed to them in this Motion.

31966747.2

course of operating such a business, numerous claims and causes of action were filed each year against, among other defendants, the Debtors, their employees, and their insurance carriers/policies. Upon the filing of the Chapter 11 Cases, hundreds of liquidated and unliquidated claims were stayed from further prosecution or enforcement efforts by operation of the Automatic Stay.

4. Following the Petition Date, the Debtors worked cooperatively with numerous tribunals, claimants, and claimants' counsel to advise parties in interest of the Automatic Stay and its applicability to the Debtors' estates. However, the Debtors recently received two (2) orders from the two (2) state courts in which the Actions are pending requesting that the Debtors obtain an order from the Bankruptcy Court which clarifies and enforces the Automatic Stay in the Actions. Through this Motion, the Debtors seek entry of the Proposed Order clarifying and enforcing the Automatic Stay in the Actions in order to protect and preserve property of the Debtors' estates from needless dissipation and waste.

## BACKGROUND

**I.    The Chapter 11 Cases**

5. On June 11, 2024 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

6. On the Petition Date, the Debtors filed a motion seeking joint administration of their chapter 11 cases (collectively, the "Chapter 11 Cases") pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 1015-1. On June 25, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed, pursuant to section 1102 of the Bankruptcy Code, an official committee of

31966747.2

3

unsecured creditors [Docket No. 139] (the "Committee").  No trustee or examiner has been appointed in the Chapter 11 Cases.

7.      Information regarding the Debtors' history, business operations, capital structure and secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the *Declaration of Spencer Ware in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 15].

**II.     The New Jersey Action**

8.      On August 19, 2019, Nelly Diestra ("Diestra") was a passenger on a bus operated by Debtor Community Transportation, Inc. ("Community") where she allegedly sustained injuries while attempting to exit the bus.  Subsequently, six (6) medical providers (collectively, the "Claimants"), including Progressive Spine & Orthopaedics ("Progressive"), sought authorization to perform surgeries on Diestra's cervical and lumbar spine as a result of her alleged, aforementioned injuries, but the requested medical treatment was denied on the basis that such surgeries were not a medical necessity.

9.      Beginning on August 6, 2021, following receipt of the denials, the Claimants filed separate personal injury protection ("PIP") arbitration demands against the Debtors' insurance carrier Greenwich Insurance Company ("Greenwich") seeking reimbursement of the costs and expenses related to the aforementioned surgeries.[3]  On September 22, 2021, Andrew A. Patriaco was appointed as the Dispute Resolution Professional (the "DRP") to oversee that certain PIP arbitration styled *Progressive Spine & Orthopaedics a/s/o Nelly Diestra v. Greenwich Insurance*

---

[3]     Pursuant to the law of the State of New Jersey, Community was required to maintain PIP coverage of $250,000 per passenger.

31966747.2

4

*Company, Forthright* [File No. NJ2209002013806] (the "PIP Arbitration").[4] On September 30, 2022 and December 19, 2022, the Claimants' separate PIP arbitration actions were consolidated for efficiency under the PIP Arbitration because they involved the same date of loss and medical treatment.

10. On April 2, 2024, a hearing was held, and on May 7, 2024, the DRP entered an award (the "PIP Award") in favor of the Claimants. Progressive's *pro rata* share of the PIP Award is $115,685.70 plus attorneys' fees and costs in the total aggregate amount of $1,736.20 (collectively, the "Progressive Award"). The PIP Award payments, including the Progressive Award payment, were to be made on or before June 21, 2024.

11. Following the Petition Date, Progressive's counsel, Joseph M. Ariyan, Esq. ("Mr. Ariyan"), sought payment of the Progressive Award from Greenwich. On July 3, 2024, following a phone call the day prior whereby Mr. Ariyan was informed of the automatic stay imposed by section 362(a) of the Bankruptcy Code (the "Automatic Stay") and that it applied to the Debtors' insurance policy with Greenwich (*i.e.*, Policy No. RAD943765206) (the "Greenwich Policy"), the Debtors sent a letter, by e-mail and certified mail, further informing Mr. Ariyan of the Automatic Stay.

12. On July 26, 2024, Mr. Ariyan initiated the New Jersey Action by filing a *Verified Complaint and Order to Show Cause*, attached hereto as Exhibit B, with the New Jersey State Court seeking, among other things, payment of the Progressive Award and scheduling a hearing for August 28, 2024 at 10:00 a.m. (ET) before The Honorable David V. Nasta, J.S.C. On August 12, 2024, the Debtors sent a letter to Judge Nasta requesting an adjournment of the New Jersey

---

[4] For the avoidance of doubt, the Debtors have been, and are responsible for, defending Greenwich in the PIP Arbitration and the New Jersey Action.

31966747.2

Action until the conclusion of the Chapter 11 Cases or, in the alternative, to allow the Debtors to seek an order from the Bankruptcy Court clarifying that the Automatic Stay applies to the claims asserted against the Greenwich Policy. *See* Exhibit C. That same day, Mr. Ariyan filed *Plaintiff's Opposition to Defendant's Adjournment Request* arguing that the Automatic Stay does not apply to the Greenwich Policy. *See* Exhibit D.

13. On August 15, 2024, Judge Nasta entered an *Order*, attached hereto as Exhibit E, staying the New Jersey Action to allow the Debtors to seek an order from the Bankruptcy Court clarifying that the Automatic Stay applies to the claims asserted against the Greenwich Policy.

### III. The California Action

14. Prior to the Petition Date, on January 20, 2023, Jose Zabaleta ("Zabaleta"), a former mechanic for Debtor Pacific Coast Sightseeing Tours & Charters, Inc. ("Pacific Coast"), filed a complaint (the "California Complaint") [Case No. BCV-23-100190], attached hereto as Exhibit F, in the Superior Court of the State of California, Kern County (the "California State Court") against Pacific Coast, John Romero ("Romero"), a former maintenance manager at Pacific Coast, and Jorge Manriquez ("Manriquez," and collectively with Pacific Coast and Romero, the "Defendants"),[5] a former mechanic at Pacific Coast, thereby initiating the California Action. The California Complaint asserts thirteen (13) causes of action. The first five (5) causes of action allege violations of the California Labor Code (the "Labor Code Claims"). Cause of action six (6) alleges a violation of the California Business & Profession Code (the "B&P Code Claim"). Causes of action seven (7) through twelve (12) allege violations of the California Fair Employment and Housing Act ("FEHA," and the FEHA causes of action collectively, the "FEHA

---

[5] The California Complaint also asserts claims against Coach USA, Karyn Pfening ("Pfening"), a current general manager at Coach USA, and Lorraine Cresto ("Cresto"), an unknown, alleged employee at Coach USA. However, Zabaleta voluntarily dismissed, without prejudice, Coach USA, Pfening, and Cresto.

31966747.2

Claims"). Cause of action thirteen (13) alleges a wrongful termination tort (the "Tort Claim"). Each cause of action is brought against all Defendants, and Zabaleta seeks an award of, *inter alia*, compensatory and punitive damages against all Defendants.

15. On May 3, 2023, the Defendants filed a *Motion to Compel Arbitration and Stay Case*, which Zabaleta opposed, and the California State Court denied on July 25, 2023. On September 7, 2023, the Defendants timely filed a *Notice of Appeal* to the California Appellate Court.

16. Following the Petition Date, on June 18, 2024, the Defendants filed a *Notice of Suggestion of Bankruptcy* (the "California Notice") informing the California Appellate Court of the Chapter 11 Cases. On July 12, 2024, the California Appellate Court entered an *Order* directing Zabaleta to file a response to the California Notice regarding whether the Automatic Stay applies to Romero and/or Manriquez. *See* Exhibit G. On July 29, 2024, Zabaleta filed *Respondent's Opposition to Notice of Suggestion of Bankruptcy* arguing that the Automatic Stay does not apply to Romero and Manriquez. *See* Exhibit H. On August 8, 2024, the Defendants filed *Appellants' Response to Respondent's Opposition to Notice of Suggestion of Bankruptcy*, attached hereto as Exhibit I, arguing that the Automatic Stay does apply to Romero and Manriquez and requesting, in the alternative, that the Debtors be allowed to seek an order from the Bankruptcy Court clarifying that the Automatic Stay does apply to Romero and Manriquez to the extent the California Appellate Court was unwilling to find as such.

17. On August 16, 2024, the California Appellate Court entered an *Order*, attached hereto as Exhibit J, staying the California Action to allow the Debtors to seek an order from the Bankruptcy Court clarifying that the Automatic Stay applies to Romero and Manriquez.

31966747.2

**RELIEF REQUESTED**

18.    By this Motion, the Debtors seek entry of the Proposed Order, clarifying and enforcing the protections of sections 362(a) and 541(a) of the Bankruptcy Code to aid in the administration of the Chapter 11 Cases.[6]

**BASIS FOR RELIEF**

19.    Immediately upon filing for chapter 11 protection, the Automatic Stay goes into effect and prohibits third parties from taking certain actions against a debtor or property of a debtor's estate without leave from the bankruptcy court. *See* 11 U.S.C. § 362(a). The Automatic Stay is "undeniably broad" and encompasses "all legal obligations of the debtor, no matter how remote or contingent." *In re Baldwin-United Corp.*, 57 B.R. 759, 763–64 (S.D. Ohio 1985) (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 309). Additionally, the Automatic Stay is an "existing, statutorily-created injunction" that a debtor can enforce by motion. *In re Extraction Oil & Gas, Inc.*, 2020 WL 7074142, at *4 (Bankr. D. Del. Dec. 3, 2020) (citing *In re THG Holdings LLC*, 604 B.R. 154, 162 (Bankr. D. Del. 2019) (Unnecessary "to establish each of the factors necessary to impose a preliminary injunction because the Bankruptcy Code itself establishes the basis for the enforcement of the automatic stay.")).

20.    Section 362 of the Bankruptcy Code serves two (2) purposes. *First*, it provides the debtor with a "breathing spell from his creditors." *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1192, 1204 (3d Cir. 1991). *Second*, it allows the debtor to reorganize in an orderly fashion and in the best interests of the debtor's creditors. *In re Rickel Home Ctrs., Inc.*,

---

[6]    To the extent the Bankruptcy Court determines that the Automatic Stay is not directly applicable to Greenwich, pursuant to the Greenwich Policy, in the New Jersey Action or Romero and Manriquez in the California Action, in the New Jersey Action, the Debtors submit that sections 105 and 362 of the Bankruptcy Code clearly support entry of the Proposed Order as an extension of the Automatic Stay, nonetheless.

31966747.2

8

199 B.R. 498 (Bankr. D. Del. 1996).  Thus, the Automatic Stay represents a fundamental protection for a debtor in bankruptcy.  *See In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011); *Univ. Med. Ctr. v. Sullivan* (*In re Univ. Med. Ctr.*), 973 F.2d 1065, 1074 (3rd Cir. 1992); *Maritime*, 959 F.2d at 1204 (citation omitted); *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (the purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and in general to avoid interference with the orderly liquidation or rehabilitation of the debtor").

21. Section 362(a)(1) of the Bankruptcy Code imposes a stay of the "continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was . . . commenced before the [Chapter 11 Cases], or to recover a claim against the debtor that arose before the commencement of the [Chapter 11 Cases]."  11 U.S.C. § 362(a)(1).  Additionally, section 362(a)(3) of the Bankruptcy Code imposes a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  "A violation of [Section] 362(a)(3) . . . requires both (1) a post-petition act; and (2) property of the estate."  *In re Welded Constr., L.P.*, 609 B.R. 101, 127 (Bankr. D. Del. 2019) (citing *Pardo v. Nylcare Health Plans, Inc.* (*In re APF Co.*), 274 B.R. 408, 416 (Bankr. D. Del. 2001)).

22. Section 362(a)(3) of the Bankruptcy Code "is generally viewed as a provision designed to prevent the 'dismemberment' of the bankruptcy estate until the bankruptcy process permits either a financial reorganization of the debtor or an orderly liquidation of the assets of the bankruptcy estate."  *In re Trump Entm't Resorts, Inc.*, 534 B.R. 93, 102 (Bankr. D. Del. 2015) (citing *In re Allentown Ambassadors, Inc.*, 361 B.R. 422, 435–36 (Bankr. E.D. Pa. 2007)).  The

31966747.2

scope of section 362(a)(3) of the Bankruptcy Code depends on the meaning of the terms "property of the estate," "obtain possession," and "exercise control." *Id.* (citing *Allentown*, 361 B.R. at 436). Section 541 of the Bankruptcy Code, in turn, provides that property of the estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of section 541 of the Bankruptcy Code is broad, and courts have construed property of the estate to include tangible and intangible property. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983); *Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006).

23. Even though the New Jersey Action only seeks to proceed against Greenwich pursuant to the Greenwich Policy, and even though the California Action nominally only seeks to proceed against the Debtors' employees Romero and Manriquez at present, the continuance of either of the Actions unquestionably threatens to deplete property of the Debtors' estates, in contravention of the purpose of the Automatic Stay.

**I.   The Automatic Stay Precludes the Enforcement of the Progressive Award Against the Greenwich Policy in the New Jersey Action**

24. As noted above, the New Jersey Action seeks payment of the Progressive Award from Greenwich pursuant to the Greenwich Policy. *First*, "[i]t has long been the rule in [the Third] Circuit that insurance policies are considered part of the property of a bankruptcy estate." *Acands*, 435 F.3d at 260 (citations omitted); *see also In re SN Liquidation, Inc.*, 388 B.R. 579, 583 (Bankr. D. Del. 2008) ("Insurance policies purchased and paid for by a debtor are property of the estate."). "The possession or control language of Section 362(a)(3) has consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies." *Acands*, 435 F.3d at 261 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.1986) (noting that a debtor's insurance policy may well be the most important asset of the estate, and

that "any action in which the judgment may diminish this 'important asset' is unquestionably subject to a stay under [11 U.S.C. 362(a)(3)]" (citation omitted))).

25. *Second*, while the Greenwich Policy includes the applicable PIP coverage as required by New Jersey law, the Greenwich Policy is a deductible policy whereby (a) the Debtors themselves are required to satisfy the first $4.95 million for each individual claim, and (b) the applicable excess insurance carriers are not required to drop down to cover the Debtors' deductible. Said another way, if the New Jersey State Court enforces the Progressive Award as against Greenwich pursuant to the Greenwich Policy, the Debtors will be required to pay the entirety of the Progressive Award in clear violation of the Automatic Stay.

26. Since the Greenwich Policy, and the collateral constituting proceeds thereof, are property of the Debtors' estates pursuant to section 541(a) of the Bankruptcy Code, and since the New Jersey Action seeks the postpetition payment of the Progressive Award from Greenwich pursuant to the Greenwich Policy, the New Jersey Action should be stayed pursuant to section 362(a)(3) of the Bankruptcy Code as a postpetition act to obtain possession of property of the estate.

## II. The Automatic Stay Precludes the Continued Prosecution of Romero and Manriquez in the California Action

27. As noted above, the California Action seeks to proceed against two (2) of the Debtors' employees, Romero and Manriquez, while it remains stayed as to Pacific Coast. For the following reasons, the Bankruptcy Court should enforce the Automatic Stay as to Romero and Manriquez in the California Action.

28. *First*, under the theory of *respondeat superior*, a judgment entered against Romero and/or Manriquez as to the Tort Claim, among potentially other causes of action, will likely be automatically imputed to Pacific Coast by operation of law. *See, e.g., Tenas-Reynard v.*

31966747.2

11

*Palermo Taxi Inc.*, 2016 WL 1276451, at *4 (S.D.N.Y. Mar. 30, 2016) ("Where a debtor and a non-debtor are so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law . . . a stay of the claim against the non-debtor may be appropriate." (citation and internal quotations omitted)). "Extending the stay to non-debtor co-defendants in these circumstances furthers the Congressional intent to give debtors a respite from litigation by not permitting indirectly what is expressly prohibited in the Code." *Id.* (citation and internal quotations omitted).

29.    *Second*, while all thirteen (13) causes of action were filed against all of the Defendants, the Debtors contend that only the Labor Code Claims and cause of action twelve (12) are applicable to all of the Defendants. Additionally, the Debtors contend that the B&P Code Claim is derivative of the Labor Code Claims,[7] causes of action seven (7) through eleven (11) are interrelated to cause of action twelve (12),[8] and the Tort Claim is interrelated to, and dependent on, the FEHA Claims.[9] In short, the causes of action are so intertwined that, putting aside any claim preclusion or issue preclusion arguments, allowing any cause of action to go forward against Romero and/or Manriquez will require Pacific Coast to participate in the California Action, in contravention of the Automatic Stay. *See A.H. Robins*, 788 F.2d at 998–

---

[7] *See, e.g.*, *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178, 999 P.2d 706 (2000) (recognizing that "any business act or practice that violates the Labor Code through failure to pay wages is, by definition . . . an unfair business practice" in violation of California's Business and Professions Code); *Varsam v. Laboratory Corp. of Am.*, 120 F. Supp. 3d 1173, 1180 (S.D. Cal. 2015) ("As Defendant correctly points out, [the Business and Professions Code] claim[ ] [is] derivative of Plaintiff's first six causes of action" for minimum wage, overtime wage, meal and rest period, and wage statement violations.).

[8] *See, e.g.*, California Complaint at 25 ¶ 138 ("restat[ing] and incorporate[ing] by . . . reference each and every preceding paragraph in this complaint" in support of Zabaleta's harassment claim); *id.* at 22 ¶ 114 (alleging Zabaleta's "physical disabilities," and requests for accommodation, and complaints for proper meal and rest breaks, and accurate overtime compensation" as the basis for his harassment claim); & *id.* at 26 ¶ 122 (identifying his termination as one of the alleged acts of harassing conduct).

[9] *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 355 (2008) ("The elements of Arteaga's common law disability termination claim are the same as those of his FEHA claim. The wrongful termination claims is, after all, based on the FEHA's prohibition of physical disability discrimination. As a result, the wrongful termination claim fails for the same reasons as the FEHA claim.").

31966747.2

1004) (noting that it is appropriate to extend the automatic stay "to cover actions against entities that truly are inextricably interwoven with the debtor or which affect property of the debtor's estate" (citation omitted)).

30. *Third*, requiring Pacific Coast to defend the California Action would require the Debtors' employment practices liability insurance policy with the Old Republic Insurance Company (the "EPL Policy") to cover the costs and fees associated with such a defense. As noted above, the Third Circuit considers a debtor's insurance policies, and the proceeds thereof, to be property of the estate pursuant to section 541(a) of the Bankruptcy Code, and the "possession or control language of Section 362(a)(3) has consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies." *Acands*, 435 F.3d at 261 (citation omitted).

31. This is a textbook example of why section 362(a) of the Bankruptcy Code exists. Without a stay of the California Action against Romero and Manriquez, the Debtors will be forced to continue participating in the California Action to defend their rights while trying to administer the Chapter 11 Cases. Additionally, such a ruling would set a precedent that could open the floodgates for the Debtors having to defend themselves in hundreds of other actions across the U.S. Furthermore, failing to stay the California Action against Romero and Manriquez would also undermine the very purpose of the Automatic Stay by requiring the Debtors to expend estate funds to mount a defense in the California Action. Zabaleta would effectively be permitted to sidestep the Automatic Stay by continuing to litigate the California Action against Romero and Manriquez, alleging the same facts and theories directed at the Debtors, but potentially without the Debtors at the table to defend themselves. Section 362(a) of

31966747.2

the Bankruptcy Code was implemented for precisely this reason and should be enforced to stay the California Action against the Romero and Manriquez.

**RESERVATION OF RIGHTS**

32. The Debtors reserve all of their rights, claims, defenses, and remedies, including, but not limited to, the right to (a) seek damages they incurred as a result of any willful violation of the Automatic Stay by any third party, (b) seek additional orders from the Bankruptcy Court clarifying and enforcing the Automatic Stay as to any third party, and (c) file an adversary proceeding seeking to extend the Automatic Stay as to any third party.

**NOTICE**

33. The Debtors have provided notice of this Motion to: (a) the U.S. Trustee; (b) holders of the 30 largest unsecured claims on a consolidated basis against the Debtors; (c) counsel to the committee; (d) counsel to Wells Fargo Bank, National Association, (i) Goldberg Kohn, 55 E. Monroe St., Chicago, Illinois 60603 (Attn: William A. Starshak (William.Starshak@goldbergkohn.com), Dimitri G. Karcazes (Dimitri.Karcazes@goldbergkohn.com), Prisca M. Kim (prisca.kim@goldbergkohn.com), and Nicole P. Bruno (Nicole.Bruno@goldbergkohn.com)) and (ii) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware (Attn: John H. Knight (knight@rlf.com) and Paul N. Heath (heath@rlf.com)); (e) counsel to Progressive Spine & Orthopaedics, Jospeh M. Ariyan, Esq. LLC, 594 Valley Health Plaza, Paramus, New Jersey 07652 (Attn: Joseph M. Ariyan (jariyan@ariyanlaw.com)); (f) counsel to Jose Zabaleta, Yoosefian Law Firm, P.C., 135 South Jackson Street, Suite 203, Glendale, California 91205 (Attn: Ronald Yoosefian (ron@ylflaw.net), Noah W. Kanter (noah@ylflaw.net), and Shant Avetyan (shant@ylflaw.net)); and (g) all parties that have filed a notice of appearance and request for service of papers

31966747.2

pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court grant the relief requested herein and such other and further relief as the Bankruptcy Court may deem just and proper.

Dated: September 3, 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Timothy R. Powell*
Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Joseph M. Mulvihill (No. 6061)
Timothy R. Powell (No. 6894)
Rebecca L. Lamb (No. 7223)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email:  emorton@ycst.com
          sbeach@ycst.com
          jmulvihill@ycst.com
          tpowell@ycst.com
          rlamb@ycst.com

*- and -*

**ALSTON & BIRD LLP**
J. Eric Wise (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
William Hao (admitted *pro hac vice*)
90 Park Avenue
New York, New York 10016
Telephone:   (212) 210-9400
Facsimile:    (212) 210-9444
Email:         eric.wise@alston.com
                matthew.kelsey@alston.com
                william.hao@alston.com

*Counsel to the Debtors and
Debtors in Possession*

31966747.2