**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| COACH USA, INC., *et al.*,[1] | Case No. 24-11258 (MFW) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket. No. 263, 570, 611 & 625 |

**DEBTORS' OMNIBUS OBJECTION TO MOTIONS
FOR RELIEF FROM THE AUTOMATIC STAY**

Coach USA, Inc. ("Coach USA") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby file this objection (this "Objection") to the *Motion of Ashley Faith Keely and Kassy D. Clifford for Relief from Stay Under Section 362 of the Bankruptcy Code, and a Request for Certain Insurance Documents* [Docket No. 263] (the "Keely Motion"), the *Motion of Mike Saheghian, Michael Saheghian, John Saheghian and the Estate of Mariam Saheghian for Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code* [Docket No. 570] (the "Saheghian Motion"), the *Motion of Anthony Supreme, as Administrator Ad Prosequendum of the Estate of Adeline Deriphonse for Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code* [Docket No. 611] (the "Supreme Motion"), and the *Motion of Tatiana Annenkova and Adam Akulich for Relief from Stay Under Section 362 of the Bankruptcy Code* [Docket No. 625] (the "Annenkova Motion," and collectively with the Keely Motion, Saheghian Motion, and Supreme Motion, the "Motions") filed by or on behalf of the movants (collectively, the "Movants") seeking relief from the automatic stay to proceed with prepetition litigation to

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/CoachUSA. The Debtors' mailing address is 160 S Route 17 North, Paramus, NJ 07652.

32084305.3

recover from the Debtors and/or the Debtors' applicable insurance policies. In support of this Objection, the Debtors respectfully represent as follows:

## **PRELIMINARY STATEMENT**[2]

1.      The automatic stay is a fundamental bankruptcy protection that affords debtors much-needed "breathing room," while protecting creditors from a race by their peers to procure judgments outside the Court. The boilerplate relief sought in the Motions does not contain any analysis of the applicable Policies, and baldly asserts that such relief will not harm the Debtors or their estates. However, granting such relief would deprive the Debtors of significant resources and inevitably expose the Debtors to significant costs and potential administrative expenses in connection with the defense of the Actions, undermining a core purpose of the automatic stay: preserving the assets of the estate for the benefit of all stakeholders.

2.      Each of the Primary Policies contain a $4.95 million Deductible, and the Debtors are responsible for paying all judgments that are incurred up to the Deductible limit, as well as all defense costs on top of that Deductible. The Movants have not made any showing that their asserted claims will clear the Deductible or otherwise be covered by any insurance proceeds. Therefore, permitting the Actions to proceed places the Debtors in an untenable situation. The Debtors can either: (a) incur significant administrative claims defending the actions, or (b) allow the Movants to obtain default judgments and risk that the insurers will later assert administrative claims under the Policies. In either scenario, the Debtors are spending current administrative dollars to defend against either prepetition claims or administrative obligations resulting therefrom.

---

[2]      Capitalized terms used in this section shall have the meanings ascribed to them in this Objection.

32084305.3

3. In addition, liquidating the Movants claims at this juncture is premature. The Debtors do not believe that the proceeds from the Sales will be sufficient to pay their secured creditors in full. Therefore, if the Movants are granted relief from the automatic stay, the Debtors will be forced incur significant administrative expenses on claims that may never be entitled to any meaningful recovery. The Movants cannot overcome their heavy burden by merely asserting, in conclusory fashion and without regard for the nature of the Policies, that there will be no meaningful prejudice to the Debtors because the Movants will pursue only insurance proceeds.

4. On the other hand, the principal "hardship" alleged by the Movants is delay in liquidating their claims. However, this hardship is not unique to the Movants. Rather, every creditor in a bankruptcy proceeding suffers from delay. To that end, courts have stated that "[i]f delay alone were enough to provide 'cause,' the stay would be terminated in every case." *In re DBMP LLC*, 2021 WL 3552350, at *34 (Bankr. W.D.N.C. Aug. 11, 2021).

5. Before filing this Objection, the Debtors engaged in meaningful discussions with the Movants to (a) provide the Movants with information related to the various Policies applicable to the Actions, including providing the Movants with copies of such Policies; and (b) respectfully request a delay in the Movants moving forward with the Motions so that the Debtors could close the outstanding Sales, reallocate necessary employees, professionals, and resources to the litany of prepetition litigation claims currently stayed as against the Debtors, and properly assess a path forward regarding the claims reconciliation process. However, the Movants have decided to proceed with the Motions under the general assertion that being granted such relief will impose no hardship on the Debtors and their estates.

6. For the following reasons, the Movants have failed to demonstrate why their claims should be treated any differently than every other unsecured claim in the Chapter 11 Cases, especially in the face of the significant prejudice to the Debtors if the Motions are granted. Accordingly, for the reasons set forth herein, the Court should respectfully deny the Motions.

## BACKGROUND

**I.    The Debtors' Insurance Policies**

7. As noted on Exhibit A to the Debtors' insurance motion [Docket No. 7], the Debtors maintain insurance policies with various insurance carriers in connection with the operation of their business. These policies included two (2) primary automobile insurance policies (collectively, the "Primary Policies") with Greenwich Insurance Co. ("AXA XL" and the policies, the "AXA XL Policies") and Momentum Risk Retention Group, Inc. ("Momentum," and the policies, the "Momentum Policies," and Momentum together with AXA XL, the "Primary Insurers"). The Primary Policies were renewed each year, and the applicable Primary Policy depends on the date of loss of the applicable claim.[3]

8. Additionally, the Debtors maintain two (2) excess policies (together, the "Excess Policies," and collectively with the Primary Policies, the "Policies") with two (2) excess insurers (together, the "Excess Insurers," and collectively with the Primary Insurers, the "Insurers"), including an umbrella policy with Aegis Casualty Consortium ("Aegis," and the policy, the "Aegis Policy") and an excess policy with National Fire & Marine Insurance Company

---

[3]    AXA XL Policy ending in 5206 applies to the Supreme Motion, a copy of which is attached hereto as **Exhibit A**, AXA XL Policy ending in 5208 applies to the Annenkova Motion, a copy of which is attached hereto as **Exhibit B**, AXA XL Policy ending in 5209 applies to the Keely Motion, a copy of which is attached hereto as **Exhibit C**. Momentum Policy ending in 7220 applies to the Saheghian Motion, a copy of which is attached hereto as **Exhibit D**.

32084305.3

4

("National Fire," and the policy, the "National Fire Policy, and National Fire together with Aegis, the "Excess Insurers," and the National Fire Policy together with the Aegis Policy, the "Excess Policies"). The Excess Policies cover dates of loss spanning multiple years, and they provide various layers of excess coverage above the Primary Policies.[4]

## II. The Actions

9. On September 22, 2023, Movants Ashley Faith Keely and Kassy D. Clifford commenced an action (the "Keely Action") against multiple Debtors and the Debtors' employee driver[5] in the District Court of the Fourth District of the State of Nevada, County of Elko, C.A. No. DC-CV-23-116, to recover for injuries allegedly sustained while riding as a passenger on a Debtor bus on or about November 28, 2022.

10. On May 24, 2022, Movants Mike Saheghian, Michael Saheghian, and John Saheghian, individually and as successors in interest to Mariam Saheghian, deceased, and the Estate of Mariam Saheghian, commenced an action (the "Saheghian Action") against multiple Debtors and the Debtors' employee driver in the Superior Court for the State of California for the County of Los Angeles, Case No. 22ST-cv-17066, to recover for the wrongful death of Mariam Saheghian after she was struck and killed by a Debtor bus on or about September 29, 2021. On April 12, 2024, the Debtors entered into a settlement agreement regarding the Saheghian Action,

---

[4] Both the Aegis Policy ending in 0453, a copy of which is attached hereto as **Exhibit E**, and National Fire Policy ending in 8831, a copy of which is attached hereto as **Exhibit F**, apply to the Motions.

[5] All of the Actions (as defined below) list a Debtor employee driver as a named defendant. While none of the Motions specifically seek relief to pursue the Debtors' employees, the Debtors request that the Court clarify and enforce that the Actions are stayed as against such Debtor employees because any judgment entered against such Debtor employees would automatically be imputed to the Debtors themselves under the doctrine of *respondeat superior* in contravention of the automatic stay imposed by section 362 of the Bankruptcy Code. *See, e.g.*, *Tenas-Reynard v. Palermo Taxi Inc.*, 2016 WL 1276451, at *4 (S.D.N.Y. Mar. 30, 2016) ("Where a debtor and a non-debtor are so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law . . . a stay of the claim against the non-debtor may be appropriate." (citation and internal quotations omitted)). This argument may also be found in paragraph 28 of the *Debtors' Motion for Entry of an Order Clarifying and Enforcing the Scope of the Automatic Stay* [Docket No. 628].

32084305.3

whereby the Debtors subsequently made the first of two (2) $5 million payments but have not made the second $5 million payment because it was due to be paid after the Petition Date.

11. On March 16, 2021, Movant Anthony Supreme, as Administrator *Ad Prosequendum* of the Estate of Adeline Deriphonse, commenced an action (the "Supreme Action") against multiple Debtors and the Debtors' employee driver in the New Jersey Superior Court for Essex County, Law Division, Case No. ES-L-2133-21, to recover for the wrongful death of Adeline Deriphonse after she was struck and killed by a Debtor bus on or about May 21, 2020. On November 7, 2023, the Debtors entered into a settlement agreement regarding the Supreme Action, whereby the Debtors subsequently made multiple settlement payments but have not made any of the settlement payments scheduled to be paid after the Petition Date.

12. On March 1, 2022, Movants Tatiana Annenkova and Adam Akulich commenced an action (the "Annenkova Action," and collectively with the Keely Action, Saheghian Action, and Supreme Action, the "Actions") against multiple Debtors and the Debtors' employee driver in the New Jersey Superior Court for Bergen County, Law Division, BER-L-00118822, to recover for injuries allegedly sustained after being struck by a Debtor bus on or about December 3, 2021.

13. On the Petition Date, the Actions and any associated settlement payments, as applicable, were automatically stayed pursuant to section 362 of the Bankruptcy Code.

**ARGUMENT**

14. The automatic stay is "one of the most fundamental protections granted a debtor under the Bankruptcy Code." *Izzarelli v. Rexene Prods. Co.* (*In re Rexene Prods. Co.*), 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Protection*, 474 U.S. 494, 503 (1986). The purpose of the automatic stay is threefold: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall

32084305.3

the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Id.* (quoting *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991)).

15. The automatic stay is designed to give a debtor a "breathing spell" free from lawsuits and other collection activities while the debtor attempts to reorganize or otherwise maximize value for stakeholders through an orderly wind-down of its affairs. *See Borman*, 946 F.2d at 1036; *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991). Implementation and maintenance of the automatic stay is fundamental to the effective administration of pending bankruptcy cases as it provides a debtor protection from "a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *In re Frigitemp Corp.*, 8 B.R. 284, 289 (S.D.N.Y. 1981) (internal citations omitted).

16. Section 362(d)(1) of the Bankruptcy Code permits a court to grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). "The term 'cause' as used in section 362(d) has no obvious definition and is determined on a case-by-case basis." *In re Integrated Health Servs., Inc.*, 2000 WL 33712483, at * 1 (Bankr. D. Del. Aug. 11, 2000); *see also In re Lincoln*, 264 B.R 370, 372 (Bankr. E.D. Pa. 2001) ("Each request for relief for 'cause' under [section] 362(d)(l) must be considered on its own facts."). In determining whether "cause" exists to lift the automatic stay, courts in this district consider the following three "*Rexene* factors":

> "(1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits."

*In re W.R. Grace & Co.*, 2007 WL 1129170, at *2 (Bankr. D. Del. Apr. 13, 2007) (citing *In re Rexene Prods Co.*, 141 B.R. at 576).

32084305.3

7

17. The Movants have not shown cause to lift the automatic stay under the *Rexene* factors. The Debtors and their estates will suffer significant prejudice if the automatic stay is lifted at this critical juncture in their bankruptcy proceedings, and the Movants have not demonstrated any hardship that would warrant immediate relief from the automatic stay, let alone hardship that "considerably outweighs" the hardship that would inure to the Debtors if the automatic stay is lifted. *In re W.R. Grace*, 2007 WL 1129170, at *2. Furthermore, the Movants have made little to no showing that they are likely to succeed on the merits of their claims. Accordingly, the United States Bankruptcy Court for the District of Delaware (the "Court") should deny the Motions.

**I.    The Debtors and Their Estates Will Suffer Significant Prejudice If the Automatic Stay Is Lifted**

18. The Debtors and their estates will suffer significant prejudice if the automatic stay is lifted and the Actions are allowed to proceed. *First*, the Debtors have closed one (1) sale and are currently in the process of closing the two (2) outstanding sales (collectively, the "Sales"), all of which account for substantially all of the Debtors' assets. *See* Docket Nos. 535, 536, 537, 538 & 612. The Debtors can ill afford the distraction and expense associated with defending the Actions, as there are already significant and conflicting demands on management's time, which include: (a) working with their counsel and advisors to prepare, prosecute, and respond to pleadings in connection with the Chapter 11 Cases; (b) complying with certain disclosure requirements as required in the Chapter 11 Cases; (c) working with their counsel and advisors to assess and process the universe of claims; and (d) most importantly, assisting their counsel and advisors with the negotiations and preparation of the various documents in connection with closing the two (2) outstanding Sales. The automatic stay is a respite designed to allow the Debtors to concentrate on these critical chapter 11 tasks without the distraction of ancillary

litigation. *See In re WR. Grace*, 2007 WL 1129170 at *2 n.7 (quoting *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)) ("The most important factor in determining whether to grant relief from the automatic stay to permit litigation to proceed against a debtor in another forum is the effect on such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit."). Lifting the stay and requiring the Debtors' representatives to, among other things, attend depositions, search for and produce documents, and appear at court proceedings in the Actions (and potentially other similar proceedings) would distract them from them the Chapter 11 Cases and significantly disrupt the Debtors' bankruptcy proceedings.

19.   *Second*, lifting the stay so that the Movants can prosecute the Actions would also deplete the Debtors' limited resources at a critical juncture and undermine one of the key objectives of the automatic stay: suspending prepetition litigation to preserve the assets of the estate for the benefit of all stakeholders. *See In re Rexene Prods. Co.*, 141 B.R. at 576 (quoting *Borman*, 946 F.2d at 1036) (stating that a fundamental purpose of the automatic stay is to "forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it"); *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993) ("[T]he automatic stay is designed to . . . protect the bankruptcy estate from being whittled away by creditors' lawsuits.").[6]

20.   Additionally, "[i]t has long been the rule in [the Third] Circuit that insurance policies are considered part of the property of a bankruptcy estate." *Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) (citations omitted); *see also In re SN Liquidation, Inc.*, 388 B.R. 579, 583 (Bankr. D. Del. 2008) ("Insurance policies purchased and

---

[6]   Indeed, the Court recently questioned the wisdom of lifting the stay "in a bankruptcy case in which general unsecured claims were going to receive only pennies on the dollar" to liquidate those claims through "long and expensive" proceedings. *See In re Yellow Corp.*, 2024 WL 1313308, at *13 (Bankr. D. Del. Mar. 27, 2024).

32084305.3

9

paid for by a debtor are property of the estate."). "The possession or control language of Section 362(a)(3) has consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies." *Acands*, 435 F.3d at 261 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.1986) (noting that a debtor's insurance policy may well be the most important asset of the estate, and that "any action in which the judgment may diminish this 'important asset' is unquestionably subject to a stay under [11 U.S.C. 362(a)(3)]" (citation omitted))).

21. This concern is even more pressing here, because each of the Primary Policies contains a deductible of $4.95 million per claim (the "Deductible"). Furthermore, under the Primary Policies, the Debtors are required to cover the costs of defending themselves, their employees acting within the scope of their employment, and the Primary Insurers, with all such defense costs being added on top of the Deductible. To the extent the applicable Primary Insurer, and potentially an applicable Excess Insurer under certain circumstances, nonetheless decides to step in and provide a defense in the Actions, the Debtors may be subjecting themselves to unnecessary administrative expenses,[7] regardless of whether the Movants seek to collect solely from the applicable Policy(ies).

22. If the Motions are granted, the Debtors will find themselves between a rock and a hard place: (a) if they opt to defend the Actions themselves, they will be forced to (i) redirect key resources away from closing the outstanding Sales and administering the Chapter 11 Cases, and (ii) incur substantial litigation costs; and (b) if they opt not to proffer a defense, they face the specter of potential administrative expense claims from the Insurers even if the Movants agree to

---

[7] For the avoidance of doubt, the Debtors do not concede that the Insurers would be entitled to an administrative expense for such defense costs. The Debtors reserve all rights, arguments, claims, and defenses with respect thereto.

32084305.3

collect solely from the Policies. Regardless, either scenario entails a substantial risk of prejudice to the Debtors' estates and will significantly frustrate the Debtors' efforts to maximize value for the benefit of all stakeholders.

23. *Third*, the Actions are not unique. There are hundreds of litigations pending against the Debtors in various courts and tribunals across the United States. Lifting the stay as to the Actions would encourage other similarly situated parties to race to the courthouse to file "me too" motions, defeating the entire purpose of the automatic stay by undermining the Debtors' ability to administer the Chapter 11 Cases, and ultimately conduct a focused, structured, and equitable claims reconciliation process. *See In re Micro Design, Inc.*, 120 B.R. 363, 369 (E.D. Pa. 1990) ("[I]f unsecured creditors could easily obtain relief from the stay to pursue their claims against debtors in other forums, rather than in the bankruptcy claims process, much of the purpose for bankruptcy filings, featuring a summary process for resolving claims, would be undermined."). Indeed, the fact that at least fifteen (15) motions for relief from stay have already been filed this early in the Chapter 11 Cases foreshadows the likelihood of many more to come if the Motions are granted. The harm caused by having to fend off an onslaught of similar motions will significantly prejudice the Debtors and interfere with their bankruptcy proceedings. *See In re DBSI, Inc.*, 407 B.R. 159, 167 (Bankr. D. Del. 2009) ("[B]y lifting the stay, I may encourage a race to the courthouse by parties seeking similar orders, which will cause undue hardship and expense to the estate."); *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying a motion to lift the stay, in part because "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case"), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009).

24. Accordingly, because the Debtors will be significantly prejudiced by the modification of the automatic stay, the Motions should be denied.

## II. The Balance of Hardships Favors the Debtors

25. To establish cause for relief from the automatic stay, the Movants bear "the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief." *In re W.R. Grace*, 2007 WL 1129170, at *3 (quoting *In re Micro Design, Inc.*, 120 B.R. at 369). The most important factor to consider when addressing whether cause exists to lift the automatic stay is the effect on the administration of the Chapter 11 Cases. *See DBSI*, 407 B.R. at 166 ("Courts also place emphasis on whether lifting the automatic stay will impede the orderly administration of the debtor's estate."); *see also In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980) ("Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited.").

26. As a primary issue, allowing the Movants to recover on their claim ahead of other unsecured creditors is contrary to the priority scheme set forth in the Bankruptcy Code and the principle of bankruptcy law that all of the Debtors' interests in property are to be distributed equitably. Such a result would encourage others to seek similar relief (and to do so as quickly as possible) and would undermine the Debtors' chapter 11 efforts and hamper their ability to conduct a focused and structured claims reconciliation process. *See In re SN Liquidation, Inc.*, 388 B.R. 579, 584 (Bankr. D. Del. 2008); *DBSI*, 407 B.R. at 167 (denying stay relief where it may encourage "a race to the courthouse by parties seeking similar orders, which will cause undue hardship and expense to the estate"); *In re Bally Total Fitness*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying a motion for relief from the automatic stay where "granting relief could

open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case"). Indeed, even if there is collateral is available to cover Deductibles not paid by the Debtors, such collateral is limited. Allowing the Actions to proceed would cause the race to the courthouse to obtain judgments that the automatic stay is designed to prevent. If the Court is inclined to allow the Movants (and other claimants) to liquidate their claims, it should establish an orderly process to ensure that all claimants are equally compensated.

27. The Movants assert that granting the Motions would not harm the Debtors' estates. *See, e.g.*, Keely Motion at ¶¶ 28–29 & 31 (arguing that the Debtors' insurance proceeds are not part of the Debtors' estates and therefore relief from the stay would not harm the Debtors' estates); Saheghian Motion at ¶¶ 19–22 (providing various arguments for why the Movant is entitled to relief from the stay); Supreme Motion at ¶¶ 20–23 (same); Annenkova Motion at ¶¶ 30–31 (arguing that the Debtors' insurance proceeds are not part of the Debtors' estates and therefore relief from the stay would not harm the Debtors' estates). The Movants' arguments do not satisfy the Movants' heavy burden. For the reasons described above, the Debtors will suffer significant prejudice if the stay is lifted, even if the stay is lifted solely so that the Movants can proceed against the applicable Policy(ies).

28. In contrast, any alleged "hardship" that the Movants would suffer from continued maintenance of the automatic stay is minimal at best and significantly outweighed by the hardship to the Debtors. The principal hardships that the Movants allege they will suffer by the continued imposition of the automatic stay is that they will have to wait to pursue their claims, and/or that they will have to adjudicate their claims in Delaware. *See, e.g.*, Keely Motion at ¶¶ 30–37; Annenkova Motion at ¶¶ 32–39. *First*, the Actions involve personal injury claims which cannot be adjudicated by the Court. *Second*, mere delay in the pursuit of their claims is

insufficient to show prejudice that outweighs the hardship to the Debtors if the stay is lifted, because delay is an intended consequence of the automatic stay. *See In re DBMP LLC*, 2021 WL 3552350, at *34 (Bankr. W.D.N.C. Aug. 11, 2021) ("If delay alone were enough to provide 'cause,' the stay would be terminated in every case."); *cf. In re Adams*, 27 B.R. 582, 585 (D. Del. 1983) ("[I]f a mortgagee could be given relief from the automatic stay whenever a debtor failed in his or her mortgage payments, the very purpose of the automatic stay . . . would be subverted.").

29. Moreover, the Movant Keely improperly attempts to use the Keely Motion as a means to seek discovery from the Debtors. *See, e.g.*, Keely Motion at ¶¶ 42–43. "Discovery is considered part of the 'continuation' of a proceeding and is, therefore, subject to the automatic stay." *In re Manown*, 213 B.R. 411, 412 (Bankr. N.D. Ga. 1997) (citing *In re Ronald Perlstein Enterprises, Inc.*, 70 B.R. 1005 (Bankr. E.D. Pa. 1987)). Nonetheless, the Debtors have attached copies of applicable Policies to this Objection. To the extent the Movants seek additional discovery, the Debtors respectfully request that the Court deny such requests.[8]

### III. The Movants Have Made No Showing Supporting Their Probability of Success on the Merits

30. The Movants' only showing of their probability of success on the merits is generally the conclusory assertion that even the slight probability of success on the merits is enough to warrant stay relief. *See, e.g.*, Keely Motion at ¶¶ 38–41; Supreme Motion at ¶ 25; Annenkova Motion at ¶¶ 40–43. The Debtors submit that the Movants' unsupported assertions have no bearing on the Movants' likelihood of prevailing in the Actions, and therefore, the Movants have failed to address this *Rexene* factor.

---

[8] For the avoidance of doubt, the Debtors reserve all rights to seek sanctions for willful violations of the automatic stay pursuant to section 362(k) of the Bankruptcy Code.

32084305.3

31. For all of the foregoing reasons, the Movants have failed to meet their heavy burden to establish cause to lift the automatic stay. Accordingly, the Court should deny the Motions.

### RESERVATION OF RIGHTS

32. Nothing contained in this Objection or any order granting the relief requested in this Objection, and no action taken by the Debtors pursuant to the relief requested or granted, is intended as or shall be construed or deemed to be: (a) an admission as to the amount of basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law, including, without limitation, with respect to the Debtors' insurance policies and coverage thereunder and the claims asserted in the Actions, or shall waive, impair, prejudice, or otherwise affect any rights, claims, defenses, arguments, or remedies of the Debtors or their estates (or any successors thereto) with respect to such matters, including, without limitation, in any proceedings before the Court or in any other court; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

**NOTICE**

33. The Debtors have provided notice of this Motion to: (a) the U.S. Trustee; (b) holders of the 30 largest unsecured claims on a consolidated basis against the Debtors; (c) counsel to the Committee; (d) counsel to Wells Fargo Bank, National Association, (i) Goldberg Kohn, 55 E. Monroe St., Chicago, Illinois 60603 (Attn: William A. Starshak (William.Starshak@goldbergkohn.com), Dimitri G. Karcazes (Dimitri.Karcazes@goldbergkohn.com), Prisca M. Kim (prisca.kim@goldbergkohn.com), and Nicole P. Bruno (Nicole.Bruno@goldbergkohn.com)) and (ii) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware (Attn: John H. Knight (knight@rlf.com) and Paul N. Heath (heath@rlf.com)); (e) counsel to Anthony Supreme, as Administrator *Ad Prosequendum* of the Estate of Adeline Deriphonse, (i) Sullivan Hazeltine Allinson LLC, 919 North Market Street, Suite 420, Wilmington, DE 19801 (Attn: William D. Sullivan (bsullivan@sha-llc.com) and William A. Hazeltine (whazeltine@sha-llc.com)) and (ii) The Gray Law Group, L.L.C., 760 Route 10 West, Suite 204, Whippany, NJ 07981 (Attn: Bruce D. Nimensky (bnimensky@graylawgroup.com)); (f) counsel to Tatiana Annenkova and Adam Akulich, (i) Conaway-Legal LLC, 1007 North Orange Street, Suite 400, Wilmington, DE 19801 (Attn: Bernard C. Conaway (bgc@conaway-legal.com)) and (ii) The Law Office of Timothy M. O'Donovan, 1860 Clove Road, Staten Island, New York 10304 (Attn: Timothy M. O'Donovan (todonovanesq@gmail.com)); (g) counsel to Ashley Faith Keely and Kassy D. Clifford, (i) Conaway-Legal LLC, 1007 North Orange Street, Suite 400, Wilmington, DE 19801 (Attn: Bernard C. Conaway (bgc@conaway-legal.com)) and (ii) Bradshaw Law LLC, 401 Railroad Street, Suite 209, Elko, NV 89801 (Attn: Denise Bradshaw (denise@bradshawlawnv.com)); (h) counsel to Mike Saheghian, Michael Saheghian, and John Saheghian, individually and as successors in interest to Mariam Saheghian, deceased, and the

32084305.3

16

estate of Mariam Saheghian (i) Sullivan Hazeltine Allinson LLC, 919 North Market Street, Suite 420, Wilmington, DE 19801 (Attn: William D. Sullivan (bsullivan@ sha-llc.com) and William A. Hazeltine (whazeltine@sha-llc.com)) and (ii) Scolinos, Sheldon & Nevell LLP, 301 North Lake Avenue, 10th Floor, Pasadena, CA 91101 (Attn: Todd F. Nevell (tnevell@ssnlaw.com)); and (i) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary

[*Remainder of Page Intentionally Left Blank*]

32084305.3

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court deny the Motions and grant such other and further relief as the Court may deem just and proper.

Dated: September 18, 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Timothy R. Powell*
Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Joseph M. Mulvihill (No. 6061)
Timothy R. Powell (No. 6894)
Rebecca L. Lamb (No. 7223)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email:   emorton@ycst.com
            sbeach@ycst.com
            jmulvihill@ycst.com
            tpowell@ycst.com
            rlamb@ycst.com

*- and -*

**ALSTON & BIRD LLP**
J. Eric Wise (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
William Hao (admitted *pro hac vice*)
90 Park Avenue
New York, New York 10016
Telephone:   (212) 210-9400
Facsimile:    (212) 210-9444
Email:          eric.wise@alston.com
                   matthew.kelsey@alston.com
                   william.hao@alston.com

*Counsel to the Debtors and
Debtors in Possession*

32084305.3